STATE OF CONNECTICUT *v.* KIRK MCDOWELL
(H14HCR960495865S)
(H14HCR960495866S)

Callahan, C. J., and Borden, Berdon, Katz, Palmer and McDonald, Js.

Officially released June 24, 1997

*Carlos E. Candal,* deputy assistant public defender, in support of the motion.

*Carolyn K. Longstreth,* assistant state's attorney, in opposition to the motion.

*Opinion*

PER CURIAM. The defendant moves pursuant to Practice Book § 4053 for review of the trial court's partial modification of his pretrial bonds.[1] We grant the motion for review, but deny the relief requested therein.

The defendant currently has two files pending in the Superior Court in Hartford. In the first file, the defendant is charged with the crimes of criminal possession of a weapon in violation of General Statutes § 53a-217 (a), attempted robbery in the first degree in violation of General Statutes §§ 53a-134 and 53a-49, reckless endangerment in the first degree in violation of General Statutes § 53a-63 and threatening in violation of General Statutes § 53a-62. All of the charges in the first file

---

[1] In accordance with Practice Book § 4053, the defendant initially filed his motion for review in the Appellate Court. We transferred the motion to this court on April 10, 1997.

arise out of an alleged attempted robbery at a Hartford grocery store. In the second file, the defendant is charged with larceny in the first degree in violation of General Statutes § 53a-122[2] based upon his alleged involvement in the theft of a motor vehicle. Both acts allegedly had been committed while the defendant was on probation. The court initially set the defendant's bond at $500,000 in the first file and $25,000 in the second file.

After a violation of probation hearing, the trial court found that it was more likely than not that the defendant had committed an assault and a breach of peace and that he had threatened the victim, an employee of the grocery store. On the basis of the evidence presented at the violation of probation hearing, the court found that the state had not substantiated the other charges by a preponderance of the evidence.[3] The court then opted to continue the defendant's probation and to extend it for one year.

Approximately six weeks later, the defendant moved for a modification of the pretrial bond set in each of his files. His motion was based principally on the weakness of the state's evidence.[4] The bail commissioner

[2] If the defendant is convicted of the class B felony of larceny in the first degree, he will also be subject to prosecution as a persistent felony offender.

[3] The state represented to the court that it had not presented all of its evidence at the violation of probation hearing. Additionally, there was no indication by the trial court that the more serious charges could not be proven beyond a reasonable doubt at a full trial.

[4] The defendant also mentioned that the police officer who first had responded to the scene at the grocery store and who had testified for the state at the violation of probation hearing had recently been involved in allegations of police brutality in an unrelated case. Subsequent to the defendant's motion before the trial court, the police officer also was charged with filing a false police report concerning the unrelated incident. We disagree with the dissent that that charge warrants our remand to the trial court for reconsideration of this defendant's bonds. The defendant, of course, is free to file in the trial court another motion for bond modification based on new evidence pursuant to General Statutes § 54-69.

informed the court that the defendant's recent criminal history included convictions of larceny in the sixth degree in 1993 and 1996, forgery in the second degree in 1995 (four counts), larceny in the sixth degree in 1993, possession of narcotics in 1992 and sale of narcotics in 1991. Additionally, and more importantly, the defendant also has convictions of failure to appear in 1991, 1995 and 1996. The court reduced the defendant's bond in the first file to $250,000 and left the bond in the second file undisturbed at $25,000.[5] The court also ordered electronic monitoring and regular drug testing in the event that the defendant posted bond.

The determination of an appropriate pretrial bond is "a matter within the sound discretion of the trial court." *Winnick* v. *Reilly*, 100 Conn. 291, 298–99, 123 A.2d 440 (1924). An appeal therefrom "will be sustained only in the event that it appears that the trial court has exercised its discretion in so unreasonable a manner as to constitute an abuse of discretion." Id. We conclude that the trial court did not abuse its broad discretion in setting the defendant's bonds in his two files at $250,000 and $25,000, respectively. The defendant has a lengthy criminal history, including three convictions of failure to appear, two of which have occurred in the past two years.

The defendant's motion for review is granted, but the relief requested therein is denied.

BERDON, J., with whom KATZ, J., joins, dissenting. Before the court is the defendant Kirk McDowell's motion for review of the trial court's decision on the amount of his pretrial appearance bonds. Although the trial court reduced the amount of the original bonds to a total of $275,000, it is still an amount that cannot be posted by the defendant. The majority of this court

---

[5] The bail commissioner recommended a bond of $50,000 in the first file and $25,000 in the second file.

grants review of the motion, but denies the relief requested. I disagree.

I recognize that an abuse of discretion standard is applied upon appellate review of a pretrial appearance bond set by a trial court. See *State* v. *Nelson*, 126 Conn. 412, 427, 11 A.2d 856 (1940) ("the fixing of [bail] is distinctively the function of a [trial] court"); *Winnick* v. *Reilly*, 100 Conn. 291, 298–99, 123 A. 440 (1924) ("as in all cases of bail, [it is] a matter within the sound discretion of the trial court, and that from such decision an appeal to this court will be sustained only in the event that it appears that the trial court has exercised its discretion in so unreasonable a manner as to constitute an abuse of discretion").

Notwithstanding the trial court's wide discretion, we should not lose sight of the purpose of a pretrial bond—it is to ensure that the accused will stand trial and submit to the sentence of the court if he or she is found guilty. "Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment." *Stack* v. *Boyle*, 342 U.S. 1, 5, 72 S. Ct. 1, 96 L. Ed. 3 (1951);[1] see also Conn. Const., art. I, § 8 ("[i]n all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great").[2]

---

[1] "Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused." *Stack* v. *Boyle*, supra, 342 U.S. 5.

[2] "The period between arrest and trial has long occupied an anomalous position in criminal procedure. The defendant has been convicted of no crime so imposition of punishment is inappropriate. Yet some restraints on the defendant's liberty may be crucial to allow the process to go forward during what [Sir William] Blackstone called 'this dubious interval.'

"For years, virtually all jurisdictions in this country resolved this tension through the venerable device of the surety bond. While formally proclaiming the defendant's freedom, the presenting judge in fact assured the defendant's

I would remand the matter to the trial court for reconsideration in light of a significant additional event that occurred after the trial court's decision on the defendant's pretrial appearance bonds—that is, police officer Hugh O'Callaghan, the investigating officer for the charges brought against the defendant, was himself arrested and arraigned on charges that he filed a false police report in an unrelated matter. Although the defendant's attorney, at the bond reduction hearing, pointed out that O'Callaghan had been arrested and arraigned for the beating of a Bloomfield citizen, the issue of the false police report that directly implicates the officer's credibility was not before the trial court.

The facts with respect to the defendant's motion for review are not in dispute. The defendant was arrested on October 19, 1996, and charged in one file with the misdemeanors of threatening in violation of General Statutes § 53a-62 and reckless endangerment in the first degree in violation of General Statutes § 53a-63, and the felonies of criminal possession of a weapon in violation of General Statutes § 53a-217 and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 and 53a-49. In a second file, the defendant was charged with larceny in the first degree in violation of General Statutes § 53a-122 for an alleged automobile theft.

Because the defendant was on probation for the sale of narcotics, an offense for which he was convicted in 1991, the state sought to revoke his probation based upon the above charges. On January 30 and February 3, 1997, the trial court heard evidence with respect to

incarceration by imposing monetary conditions which the defendant could not hope to satisfy, often without reference to the facts of the particular case. This system not only mocked the presumption of innocence . . . [but it] also perpetuated a particularly virulent form of wealth discrimination . . . ." 2 A.B.A., Standards for Criminal Justice (2d Ed. 1980) Pretrial Release, c. 10, p. 10-4, introduction.

those alleged crimes and O'Callaghan was the state's principal witness. The trial court found that the state had failed to prove *by a fair preponderance of the evidence* that the defendant had committed the felonies of attempted robbery and the lesser included offense of attempted larceny, but did find sufficient evidence to support a violation of probation based upon the commission of the misdemeanors of threatening, assault in the third degree and breach of the peace.[3] The trial court, however, refused to revoke the defendant's probation, but, instead, extended it for one year. The state, notwithstanding the court's finding that it failed to prove that the defendant had committed the felonies by a fair preponderance of the evidence in order to prove a violation of his probation, continues with the prosecution of these crimes.

On February 7, 1997, the defendant filed a motion to dismiss the felony charges on the ground of collateral estoppel, and at the same time moved to reduce the bonds. The trial court denied the motion to dismiss on the ground that the state could produce additional evidence at the defendant's trial. An interlocutory appeal was filed with respect to the denial of the motion to dismiss, and that appeal is now pending before this court.

The trial court reduced the bond from $500,000 to $250,000 on the first file, with the additional conditions of electronic monitoring and regular drug testing. On the second file, the trial court did not modify the $25,000 bond. The defendant sought this review of the amounts of the bonds, which he claims are excessive.

---

[3] While the trial court made no specific finding on the criminal possession of a weapon and the reckless endangerment charges, the trial court implicitly did not find that the defendant had committed those offenses because the court found only that, at most, it was more likely than not that the defendant had committed the misdemeanor offenses of threatening, assault in the third degree and breach of the peace.

A defendant who is incarcerated pending trial of his case is put at a decided disadvantage. "[The] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. . . . Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." (Citation omitted.) *Stack* v. *Boyle*, supra, 342 U.S. 4; see also 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 12.2 (c), p. 126 ("[t]here is little reason to doubt the proposition that pretrial detention has a significant adverse impact upon the ability of a defendant to vindicate himself at trial or secure leniency in sentencing"). Not only does the defendant lose his personal liberty and become hindered in aiding in his own defense, but the nature of his pretrial confinement is particularly harsh. "The principle that unconvicted [defendants] ought not to be punished is a corollary to the presumption of innocence and is deeply rooted in our jurisprudence. . . . In practice . . . our record of treating pretrial detainees with the utmost humanity is not a good one. In fact, unconvicted defendants typically receive worse treatment prior to trial than convicted defendants receive after trial." 2 A.B.A., Standards for Criminal Justice (2d Ed. 1980) Pretrial Release, standard 10-5.14, p. 10-114, commentary. For example, a defendant who is confined before trial is unable to participate in rehabilitative programs.

Certain matters set forth in Practice Book § 666 (b)[4] must be considered with respect to a defendant's

---

[4] Practice Book § 666 (b) provides in relevant part: "[T]he judicial authority may, in determining what conditions of release will reasonably assure the appearance of the defendant in court and that the safety of any other person will not be endangered, consider the following factors:

"(1) The nature and circumstances of the offense;

"(2) The defendant's record of previous convictions;

"(3) The defendant's past record of appearance in court after being admitted to bail;

motion for bond reduction. Most importantly, a defendant's indigency must be taken into account. "As for the relevance of the defendant's indigency upon the Eighth Amendment bail question, *Stack* v. *Boyle* [supra, 342 U.S. 5] is itself instructive, for it expressly [indicates] that 'the financial ability of the defendant to give bail' is one of the factors which must be taken into consideration. This is certainly sensible, for 'an impecunious person who pledges a small amount of collateral constituting all or almost all of his property is likely to have a stake at least as great as that of a wealthy person who pledges a large amount constituting a modest part of his property.' [*Pannell* v. *United States*, 320 F.2d 698, 702 (D.C. Cir. 1963) (Bazelon, C. J., concurring in part and dissenting in part)]." 2 W. LaFave & J. Israel, supra, § 12.2 (b), p. 123. "To impose a financial requirement which is beyond [a defendant's] means is unreasonable and, of course, makes the determination of eligibility [for bail] purposeless." *Pannell* v. *United States*, supra, 701 (Bazelon, C. J., concurring in part and dissenting in part); see also 2 A.B.A., Standards for Criminal Justice, supra, standard 10-5.4 (e), p. 10-76 ("[i]n setting the amount of bail, the judicial officer should take into account the defendant's financial ability to post the bond"); 8 Am. Jur. 2d 645, Bail and Recognizance § 80 (1980) ("[a] court should give some regard to the prisoner's pecuniary circumstances, since what is reasonable

---

"(4) The defendant's family ties;

"(5) The defendant's employment record;

"(6) The defendant's financial resources, character and mental condition;

"(7) The defendant's community ties;

"(8) The number and seriousness of charges pending against the defendant;

"(9) The weight of the evidence against the defendant;

"(10) The defendant's history of violence;

"(11) Whether the defendant has previously been convicted of similar offenses while released on bond; and

"(12) The likelihood based upon the expressed intention of the defendant that he will commit another crime while released."

bail to a man of wealth may be equivalent to a denial of the right to bail if exacted of a poor man charged with a like offense").

I recognize that the defendant has a record for *nonviolent* crimes, such as possession and sale of narcotics, forgery and failure to appear in court. His attorney, however, argued before the trial court that the defendant has lived in Hartford all his life, has strong family ties in the area, and was gainfully employed before his arrest. These are all factors that militate in favor of pretrial release. See footnote 4 of this opinion. Even the bail commissioner recommended that the defendant's higher bond in the first file be reduced from $250,000 to $50,000 and that the bond in the second file remain at $25,000. Furthermore, the additional condition of electronic monitoring is an important factor to take into account with respect to the establishment of a pretrial appearance bond.

More importantly, the state's inability to prove that a violation of probation occurred, based upon the felonies for which the defendant was charged, is a significant factor militating in favor of remanding the matter for reconsideration. The trial court, at the hearing, specifically found the following: "The court does not find that there has been a preponderance of the evidence to establish in the court a reasonable belief that a robbery has occurred nor does the court believe by the preponderance of the credible evidence adduced that an attempted larceny has occurred, but the court is satisfied by the evidence that it is more likely than not that there was a threat and that there has been an assault and that there has been a breach of the peace." In other words, the state did not establish that the defendant committed the felonies.[5] In addition, the state's case is further undermined as a result of the additional charge

---

[5] See footnote 3 of this opinion.

against O'Callaghan, namely, that he filed a false police report, a fact that directly implicates the police officer's credibility. This latter fact was not before the trial court when it determined the amount of the appearance bonds. Even if the state is not collaterally estopped from pursuing the felony charges against the defendant, the inability of the state to establish those at the violation of probation hearing, together with the police officer's credibility being substantially impaired, are significant factors to be considered in establishing the amount of the appearance bonds.

Because the felony charges against the defendant are seriously undermined, compelling reasons exist for this court to have the trial court reconsider the defendant's motion to reduce his pretrial appearance bonds in light of the additional evidence that bears on the officer's credibility. "The probability of the establishment of guilt at the trial, or the existence of doubt as to the guilt of the accused, is a proper consideration in determining the amount of the bail. Hence a court, in determining the amount of bail, may consider the character and strength of the evidence by which the crime charged is supported." 8 Am. Jur. 2d 645, Bail and Recognizance § 79 (1980); see also Practice Book § 666 (b) (in determining conditions of pretrial release, trial court may take into consideration "[1] [t]he nature and circumstances of the offense . . . [8] [t]he number and seriousness of charges pending against the defendant [and] [9] [t]he weight of the evidence against the defendant").

Accordingly, I dissent.