STATE OF CONNECTICUT *v.* KIRK MCDOWELL
(SC 15654)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued May 28—officially released August 26, 1997

*Mark Rademacher*, assistant public defender, with whom was *Carlos E. Candal*, deputy assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, assistant state's attorney, with whom were *David Zagaja*, deputy assistant state's attorney, and, on the brief, *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Kirk McDowell, appeals from the denial of a motion to dismiss.[1] He

---

[1] The state does not contest that the denial of this motion to dismiss constitutes a final judgment. See *State* v. *Aparo*, 223 Conn. 384, 614 A.2d

claims that the state, because of common-law collateral estoppel and the constitutional protections against double jeopardy, may not prosecute him for an attempted robbery, criminal possession of a weapon or reckless endangerment when it has failed to prove a violation of probation based upon those charges. See *State* v. *McDowell*, 241 Conn. 413, 413–14, 696 A.2d 977 (1997). We reject the defendant's claims and, therefore, we affirm the judgment of the trial court.

The following facts and procedural history are undisputed. The defendant was charged with attempted robbery in the first degree in violation of General Statutes §§ 53a-134 and 53a-49, criminal possession of a weapon in violation of General Statutes § 53a-217, threatening in violation of General Statutes § 53a-62 and reckless endangerment in the first degree in violation of General Statutes § 53a-63. These charges stemmed from an incident at Mitchell's Grocery in the city of Hartford. The state also sought to revoke the defendant's probation on the basis of that incident.[2]

At the defendant's revocation hearing, the state sought to prove that the defendant had been carrying a gun and had used and threatened to use immediate physical force to obtain money. After the hearing, the trial court found that the state had proved by a preponderance of the evidence that the defendant had violated his probation. Upon the defendant's request for clarification of this finding, the court held that the defendant had violated his probation by threatening an employee of the grocery store, by committing a breach of the peace and by committing an assault. See *State* v.

401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993); *State* v. *Powell*, 186 Conn. 547, 552–53, 442 A.2d 939, cert. denied, 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982).

[2] In 1991, the defendant had been sentenced to a term of probation on his conviction of the sale of narcotics. See *State* v. *McDowell*, supra, 241 Conn. 417 (*Berdon, J.*, dissenting).

*McDowell*, supra, 241 Conn. 414. The court further found, however, that the state had not presented sufficient evidence to establish that a robbery or an attempted larceny had occurred, and did not address the charges of criminal possession of a weapon and reckless endangerment. The trial court thereupon extended the defendant's probation for one year.

The defendant thereafter moved to dismiss the criminal charges.[3] He argued that collateral estoppel bars the state from retrying factual issues decided at the revocation hearing.[4]

The trial court denied the defendant's motion. The court held that the issues in the criminal case were not fully and fairly litigated in the revocation hearing because the state lacked the incentive to present its best evidence at that hearing. The trial court also concluded that no final judgment was rendered at the revocation hearing as to the robbery charge. The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4024 and General Statutes § 51-199 (c).

I

The defendant argues that his trial on the criminal charges would violate the double jeopardy clause.[5] We find no merit to the defendant's claim.

---

[3] The defendant conceded before the trial court, and has not argued otherwise to this court, that he can be tried on the threatening charge.

[4] In *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), the United States Supreme Court incorporated collateral estoppel into the double jeopardy clause of the fifth amendment to the United States constitution. Collateral estoppel, however, has constitutional significance only if jeopardy attaches at a proceeding. See *Ohio* v. *Johnson*, 467 U.S. 493, 500 n.9, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984).

[5] The defendant raises the double jeopardy issue under the fifth amendment to the United States constitution and article first, § 9, of the constitution of Connecticut. The defendant fails, however, to provide an independent analysis of his state constitutional claim. Accordingly, we do not consider it. *State* v. *Dyson*, 238 Conn. 784, 794, 680 A.2d 1306 (1996).

The defendant claims that jeopardy attaches in a revocation hearing because it is essentially a criminal proceeding. He argues that the revocation of probation is essentially punitive, rather than remedial, because a consequence of a probation violation may be incarceration. The defendant further argues that the basis of the punishment is the new criminal conduct and not the prior conduct for which he had already been sentenced. He thereby attempts to distinguish *State* v. *Smith*, 207 Conn. 152, 177, 540 A.2d 679 (1988), which held that "[r]evocation hearings are not concerned with punishment or retribution."

The defendant also argues that because of the policy concerns for judicial economy, public perception of inconsistent verdicts, and vexatious litigation, this court should eschew labels and look at the substance of the revocation hearing. In support of this argument, the defendant cites *Breed* v. *Jones*, 421 U.S. 519, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975). In *Breed*, the United States Supreme Court prohibited the retrial of a defendant as an adult who previously had been found delinquent at a juvenile hearing. Id., 541. The court thereby rejected the prosecution's contention that the rehabilitative purpose of the juvenile proceeding should control rather than its criminal nature. Id., 535.

In sum, the defendant argues that the revocation hearing and the criminal trial are essentially similar and, therefore, the principles of double jeopardy are applicable. He asserts that a revocation proceeding is tantamount to a criminal trial because in both proceedings a defendant has a right to counsel, to an arrest by warrant, to bail, to notice of the charges, to cross-examine witnesses, and to call one's own witnesses. See General Statutes § 53a-32; *State* v. *Roberson*, 165 Conn. 73, 81–82, 327 A.2d 556 (1973). We disagree with the defendant.

Jeopardy attaches only to proceedings which are " 'essentially criminal.' " *Breed* v. *Jones*, supra, 421 U.S. 528. The United States Supreme Court and this court have held that revocation hearings are not criminal proceedings. *Morrissey* v. *Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *State* v. *Smith*, supra, 207 Conn. 176.

In *State* v. *Smith*, supra, 207 Conn. 176–78, this court concluded that the double jeopardy clause did not bar violation of probation hearings following a criminal conviction for three reasons. First, "[r]evocation hearings are not concerned with punishment or retribution." Id., 177. Rather, probation seeks "to normalize the probationer into society as soon as reasonably possible," and the revocation hearing "presents the ultimate question whether the probationer is still a 'good risk' to be continued in that status." Id. Second, any punishment involved is "attributable to the crime for which [the defendant] was originally convicted and sentenced," rather than to the charges on which the violation of probation is based. Id., 178. Third, the revocation hearing is less formal than the criminal trial, and, in that hearing, the state need only prove its case by a preponderance of the evidence. Id., 176–77; see *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). In *Smith*, we considered the differences in the state's burden of proof to be significant. *State* v. *Smith*, supra, 177.

This case differs from *Smith* only in that we must here decide whether jeopardy attaches at a revocation hearing to bar a trial of the new criminal charges. We hold that the three rationales of *Smith* apply equally here and that, therefore, the double jeopardy clause does not prevent the state from prosecuting the defendant.

The purpose of a revocation hearing is to determine whether the defendant is a good risk for continued

probation and not to punish him for a new criminal offense. Id., 177–78. This is central to the holding in *Smith*, which tracks any punitive aspect of the revocation of probation back to the original offense for which the defendant had been convicted. "Revocation is a continuing consequence of the original conviction from which probation was granted." Id., 178. Moreover, as the court in *Smith* recognizes, a revocation hearing and a criminal trial differ in form and procedure. Revocation proceedings, although they are adversarial, are less formal than criminal proceedings and the technical rules of procedure do not apply. Id., 176–77. At a revocation proceeding the state must meet a burden of a preponderance of the evidence while at a criminal trial it must prove its case beyond a reasonable doubt. Id., 177. The revocation hearing is, thus, not essentially criminal.

We here continue to follow the clear holding in *Smith* that jeopardy does not attach at the revocation hearing. Accordingly, we hold that the double jeopardy clause does not bar the prosecution of the charges pending against the defendant.

## II

The defendant also claims that the common-law doctrine of collateral estoppel should preclude the state from relitigating the same issues litigated in the revocation hearing. We find no merit to the defendant's claim.

The defendant argues that the factual issues regarding the incident at Mitchell's Grocery were necessarily decided at the revocation hearing, that they were fully and fairly litigated and that a final judgment was rendered in his favor. The defendant also argues that the policies giving rise to collateral estoppel support his position. He claims that the furtherance of judicial economy, the promotion of public confidence and the prevention of harassing litigation support his position.

The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Issue preclusion arises when an issue " 'is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment.' " *Scalzo* v. *Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992). Also, the issue " 'must have been fully and fairly litigated in the first action.' " *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988).

The decisions of other courts provide us guidance. Some states have held that where "a specific finding on a material matter of fact [is] fully litigated" at the revocation proceeding, the state is estopped from relitigating the issue. *State* v. *Chase*, 588 A.2d 120, 123 (R.I. 1991); *Ex parte Tarver*, 725 S.W.2d 195, 200 (Tex. Crim. App. 1986); see also *People* v. *Bone*, 82 Ill. 2d 282, 412 N.E.2d 444 (1980); *State* v. *Donovan*, 305 Or. 332, 751 P.2d 1109 (1988). This reasoning does not persuade us. The court in *State* v. *Chase*, supra, 123, held that if the state had notice and the opportunity to litigate fully and fairly an issue at the revocation proceeding, it was sufficient to preclude the subsequent relitigation in a criminal trial. See *State* v. *Donovan*, supra, 336. This conclusion ignores the reality that the state in this case had no incentive to present its best evidence at the revocation proceeding where there was a lower standard of proof. Moreover, if the state proceeds with a revocation proceeding before its criminal investigation

is complete, evidence may be acquired after the revocation proceeding and before the criminal trial. *Ex parte Tarver*, supra, 195, similarly fails to address this issue.

We follow the better reasoning of other courts that have addressed this issue and have concluded that collateral estoppel does not apply to issues raised at a revocation hearing and later forming the basis of a criminal trial. *United States* v. *Miller*, 797 F.2d 336 (6th Cir. 1986); *Lucido* v. *Superior Court*, 51 Cal. 3d 335, 795 P.2d 1223, 272 Cal. Rptr. 767 (1990), cert. denied, 500 U.S. 920, 111 S. Ct. 2021, 114 L. Ed. 2d 107 (1991); *People* v. *Fagan*, 104 App. Div. 2d 252, 483 N.Y.S.2d 489 (1984), aff'd, 66 N.Y.2d 815, 489 N.E.2d 222, 498 N.Y.S.2d 335 (1985); *Commonwealth* v. *Cosgrove*, 427 Pa. Super. 553, 629 A.2d 1007 (1993); *State* v. *Dupard*, 93 Wash. 2d 268, 609 P.2d 961 (1980).

The New York Court of Appeals in *People* v. *Fagan*, supra, 66 N.Y.2d 815, refused to apply collateral estoppel even if its "formal prerequisites" were met. The court reasoned that "[t]he correct determination of guilt or innocence is paramount in criminal cases . . . and the People's incentive to litigate in a felony prosecution would presumably be stronger than in a parole revocation proceeding . . . ." (Citations omitted.) Id.

The California Supreme Court reasoned that the differing purposes of the criminal justice and probation systems should control. *Lucido* v. *Superior Court*, supra, 51 Cal. 3d 348–49. "Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes." Id., 349. The Pennsylvania Superior Court echoed this reasoning. "It is only through a criminal trial at which the defendant is presumed innocent and the Commonwealth bears

the burden of proof of guilt beyond a reasonable doubt that contested issues of criminal culpability are determined with finality. To cede this responsibility to a setting that does not adhere to the procedural safeguards necessary for a fair adjudication of guilt, such as a probation revocation hearing, would result in a perversion of the criminal justice system." *Commonwealth* v. *Cosgrove*, supra, 427 Pa. Super. 560.

Our own cases that discuss the policy behind collateral estoppel recognize these same principles. We have held that in criminal matters, judicial economy must give way to the demand for the truth. "[T]he essentially public objectives of the criminal law advise against the uncritical adoption of [res judicata] concepts." *State* v. *Ellis*, supra, 197 Conn. 471. A court's interest in finality, therefore, must be balanced against the needs of criminal justice. Finality " 'is less relevant in criminal cases where the pre-eminent concern is to reach a correct result and where other considerations peculiar to criminal prosecutions may outweigh the need to avoid repetitive litigation . . . .' " Id., 470, quoting *People* v. *Plevy*, 52 N.Y.2d 58, 64, 417 N.E.2d 518, 436 N.Y.S.2d 224 (1980).

Moreover, we must consider the importance of public confidence in our criminal justice system. *State* v. *Ellis*, supra, 197 Conn. 466. From the birth of this republic, only criminal trials have been used to decide matters of guilt or innocence. The people continue to look to that process. Accordingly, collateral estoppel arising from a probation revocation hearing should not bar such a criminal trial.

The judgment is affirmed.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. I disagree with part II of the majority opinion because the doctrine of collateral

estoppel (issue preclusion) should bar the state from relitigating the issues already resolved by the trial court at the defendant's violation of probation hearing. Specifically, the trial court found that the state had failed to prove by a fair preponderance of the evidence that the defendant had committed the felonies of armed robbery, criminal possession of a weapon, and the misdemeanor of reckless endangerment in the first degree. Because of the trial court's findings at the violation of probation hearing, the defendant claims that he cannot now be prosecuted for those crimes because the state is collaterally estopped from doing so. The majority does not, and cannot, dispute that the requirements for collateral estoppel have been met, yet it rejects applying collateral estoppel based on certain public policy reasons. I am concerned with the majority's reasoning because, in my view, the public policies underlying collateral estoppel militate in favor of the application of that doctrine in this case.

I begin by stating that I am deeply troubled by the majority's reasoning that allows prosecutors to conduct fishing expeditions by indicating that "the state in this case had no incentive to present its best evidence at the revocation proceeding where there was a lower standard of proof." According to the majority, the state can put on minimal evidence, but the defendant would be placed in the unenviable position of jeopardizing his criminal trial by giving the state a *preview* of his defense if he wants to contest the revocation proceeding, a right he surely holds. Second, the majority colors this case with the argument that public confidence requires that guilt or innocence only be determined in criminal trials. What the majority misses, however, is that "public confidence in the legislative remedy administered by the courts will not be promoted by allowing the [state] to treat the revocation hearing as a '*Heads I win, tails I flip again*' proposition." (Emphasis added.) *Lucido* v.

*Superior Court,* 51 Cal. 3d 335, 367, 795 P.2d 1223, 272 Cal. Rptr. 767 (1990) (Broussard, J., dissenting), cert. denied, 500 U.S. 920, 111 S. Ct. 2021, 114 L. Ed. 2d 107 (1991).

The following facts are relevant to this appeal. "The defendant was arrested on October 19, 1996, and charged . . . with the misdemeanors of threatening in violation of General Statutes § 53a-62 and reckless endangerment in the first degree in violation of General Statutes § 53a-63, and the felonies of criminal possession of a weapon in violation of General Statutes § 53a-217 and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 and 53a-49. . . .

"Because the defendant was on probation for the sale of narcotics, an offense for which he was convicted in 1991, the state sought to revoke his probation based upon the above charges. On January 30 and February 3, 1997, the trial court heard evidence with respect to those alleged crimes . . . . The trial court found that the state had failed to prove *by a fair preponderance of the evidence* that the defendant had committed the felonies of attempted robbery and the lesser included offense of attempted larceny, but did find sufficient evidence to support a violation of probation based upon the commission of the misdemeanors of threatening, assault in the third degree and breach of the peace.[1] The trial court, however, refused to revoke the defendant's probation, but, instead, extended it for one year. The state, notwithstanding the court's finding that it failed

---

[1] "While the trial court made no specific finding on the criminal possession of a weapon and the reckless endangerment charges, the trial court implicitly did not find that the defendant had committed those offenses because the court found only that, at most, it was more likely than not that the defendant had committed the misdemeanor offenses of threatening, assault in the third degree and breach of the peace." *State* v. *McDowell,* 241 Conn. 413, 418 n.3, 696 A.2d 977 (1997) (*Berdon, J.,* dissenting).

to prove that the defendant had committed the felonies by a fair preponderance of the evidence in order to prove a violation of his probation, continues with the prosecution of these crimes." (Emphasis in original.) *State* v. *McDowell*, 241 Conn. 413, 417–18, 696 A.2d 977 (1997) (*Berdon, J.*, dissenting).[2]

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action*. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374 (1993). In sum, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). I conclude that the facts

---

[2] I previously dissented in this court's refusal to have the trial court reconsider the defendant's motion to reduce his pretrial appearance bonds in light of certain considerations. See *State* v. *McDowell*, supra, 241 Conn. 415.

of this case meet this criteria, and the majority makes no attempt to dispute that they do not.

Several courts have recognized that collateral estoppel bars the state from relitigating issues where the trial court made specific findings on the issue in question at a previous probation revocation proceeding. See, e.g., *People* v. *Bone*, 82 Ill. 2d 282, 288, 412 N.E.2d 444 (1980) (in deciding whether collateral estoppel bars prosecution subsequent to probation revocation hearing, "[t]he question to be determined is whether an issue of ultimate fact was decided in the prior revocation proceeding which was determinative of the issues in the criminal prosecution for the offenses committed," although court found that collateral estoppel did not bar prosecution because "[a]n examination of the record . . . show[ed] that no such issue of ultimate fact was determined"); *State* v. *Donovan*, 305 Or. 332, 342–43, 751 P.2d 1109 (1988) (court concluded that collateral estoppel did not bar subsequent prosecution because trial judge in that case made no findings but indicated that "if the state elects and a judge agrees to conduct a probation revocation hearing that concerns any of the elements of a new offense, then collateral estoppel . . . will apply against the state if the judge finds that a necessary element is not proven at the hearing. If, for instance, a probationer is charged with armed robbery and the alleged probation violation is carrying a weapon at the time of the robbery and the probation hearing judge determines that no weapon was involved, then the state would be collaterally estopped from proving armed robbery in a subsequent trial. . . . An issue is precluded when a specific finding is made, not when the issue is not resolved for lack of a finding." [Citations omitted; internal quotation marks omitted.]); *State* v. *Chase*, 588 A.2d 120, 123 (R.I. 1991) (concluding that collateral estoppel precludes state from relitigating, in subsequent prosecution, finding from probation

revocation hearing that defendant had not committed offense); *Ex parte Tarver*, 725 S.W.2d 195, 200 (Tex. Crim. App. 1986) (same).

Although recognizing *Chase* and *Ex parte Tarver*, the majority dismisses them as unpersuasive. I find their reasoning compelling. In *Chase*, under the circumstances of that case, the court concluded that the requirements for collateral estoppel had been met. The court indicated that "only a *specific finding* on a material matter of fact fully litigated at the probation-revocation hearing will collaterally estop the state from attempting to prove the same fact at trial. . . . The disposition of the instant case should encourage the state to initiate future probation-revocation proceedings with more concern for judicial economy. *The state should not use a probation-revocation hearing as proving ground for its substantive case.* Alternatively, the state may elect to bring a defendant to trial first and to institute the probation-revocation hearing after." (Emphasis added.) *State* v. *Chase*, supra, 588 A.2d 123.[3]

In *Ex parte Tarver*, supra, 725 S.W.2d 199, the court indicated that "[t]he questions to be asked are: Has a fact issue already been determined, adversely to the [s]tate, in a valid and final judgment between the same parties? Is the [s]tate now trying to relitigate the same fact issue?" In answer to those questions, the court stated that "[t]he parties were the same as they would be

[3] If the violation of probation hearing was held subsequent to the trial on the crime charged, and the state secured a conviction, that conviction, of course, would support a violation of probation. See *State* v. *March*, 39 Conn. App. 267, 279, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995) (affirming trial court's decision to revoke defendant's probation and stating that "[a]t the trial on [the] charges the jury found, beyond a reasonable doubt, that the defendant had committed attempted sexual assault in the first degree on a four year old child and risk of injury to that child. The trial court, considering the evidence from the trial, made an independent determination, explicitly set forth in the record, that the defendant had violated his probation.").

in the [criminal] prosecution. The allegation the [s]tate sought to prove was identical. The hearing was before a [trial] judge as a finder of fact. The major difference between the two proceedings was the standard of proof, but it was the *lower*, 'preponderance of the evidence' standard the [s]tate failed to meet in the revocation hearing. Having failed to meet that burden, the [s]tate is now attempting to relitigate the same resolved fact issue, under a higher burden of proof." (Emphasis in original.) Id. Stated another way, the court indicated that "[t]he [s]tate is not trying twice to prove [the] applicant guilty, because 'guilt' as such was not the issue in the probation revocation hearing. The [s]tate *is* attempting, however, to prove the *fact* that would lead to a finding of guilt, i.e., that [the] applicant committed the alleged assault, after once failing to prove that fact in a full hearing." (Emphasis in original.) Id., 200. Here, the state is attempting to do just that.

The majority, in support of its decision to ignore the applicability of collateral estoppel, relies partially on *Lucido* v. *Superior Court*, supra, 51 Cal. 3d 335. I am unpersuaded by the majority opinion in *Lucido* because, in my view, the two dissents in that case hit the mark. After agreeing with the majority's concession that the traditional prerequisites for the application of collateral estoppel were met in that case, Justice Mosk went on to state that "[w]e traditionally recognize three public policies underlying collateral estoppel, and each favors its application here. First, public confidence in the integrity of the judicial system is threatened when two tribunals render inconsistent judgments on the same facts involving the same parties. . . . When decisions are inconsistent, individuals have little incentive to rely on judicial action. . . . Collateral estoppel is intended to prevent . . . repetition, which not only results in inconsistent judgments but allows the [state], through sheer perseverance, to litigate and litigate until

they, in their view, *'get it right.'*" (Citations omitted; emphasis added.) Id., 355–56 (Mosk, J., dissenting). Justice Mosk stated that "[t]he second policy underlying collateral estoppel, interest in judicial economy, also is furthered when we forbid repetitive prosecution of a criminal defendant for the same alleged crime. . . . While one cannot dispute the importance of criminal trials for determining guilt or innocence, I believe the majority needlessly threaten[s] the due process rights of criminal defendants. If preserving the criminal trial as the exclusive forum for determining guilt or innocence is of transcendent importance—and often it is— the district attorney should proceed to such trial first, *before* he compels a defendant to defend himself against precisely the same factual allegations at an earlier revocation hearing. Once the People unilaterally decide to seek probation revocation on the criminal allegations before proceeding to trial, however, they should be bound by their failure to prove their allegations." (Emphasis in original.) Id., 356–57 (Mosk, J., dissenting). The third public policy, as pointed out by Justice Mosk in his dissent, is that collateral estoppel prevents a person from being harassed by vexatious litigation. Id., 357.

In *Lucido*, Justice Broussard also dissented, and echoed some of the same sentiments as Justice Mosk. "When the state seeks to revoke a defendant's probation because he committed a new criminal act, the judge will almost always have to decide as a question of fact whether the defendant committed that act. The role of the court in resolving such a contested issue of fact is identical to that of the jury at trial. When the judge actually makes an *express factual finding* after litigation of the issue, this is no different than a factual decision in any other context and collateral estoppel bars relitigation despite the different purposes and procedures at trial and at the hearing. . . . The majority

would not be forced to distort the law of collateral estoppel if prosecutors would simply elect to proceed to trial first, allowing the probation revocation hearing to follow. . . . Any of the adverse policy consequences that the majority asserts might result from application of collateral estoppel in this case should not bar [application of the doctrine] where the *state exercises its discretion to bring those consequences upon itself.*" (Citations omitted; emphasis added.) Id., 365 (Broussard, J., dissenting).

In sum, not only does collateral estoppel clearly apply in this case because the formal requirements are met, but the public policies underlying the doctrine, previously noted, militate in favor, and not against, its application. The findings of the trial court at the violation of probation hearing, when considered in the context of what came to light during the hearing,[4] demonstrate that the question of whether the defendant committed the crimes at issue have been resolved by the trial court with a resounding "no." In this case, the trial court made specific findings that the state had failed to prove that the defendant had committed the crimes that the state is now seeking to prosecute. "The trial court, at the hearing, specifically found the following: 'The court does not find that there has been a preponderance of the evidence to establish . . . a reasonable belief that a robbery has occurred nor does the court believe by the preponderance of the credible evidence adduced that an attempted larceny has occurred, but the court is satisfied by the evidence that it is more likely than not that there was a threat and that there has been an assault and that there has been

---

[1] At the violation of probation hearing, the defendant seriously undermined the state's allegations that the defendant had committed an attempted robbery with a handgun or that a handgun was used in the alleged dispute. First, no gun was ever recovered. Second, it came to light during cross-examination of the victim that he had never seen a handgun during the alleged dispute.

a breach of the peace.' "[5] *State* v. *McDowell*, supra, 241 Conn. 421 (*Berdon, J.*, dissenting). The state should be bound by those findings and the defendant's motion to dismiss based upon collateral estoppel should have been granted.

Accordingly, for the reasons set forth herein, I dissent.

---

[5] See footnote 1 of this opinion.