[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 ISSUE
Whether or not cash bond is warranted in the above matter and whether or not the defendant is entitled to any relief. In deciding this question, the Court must decide whether Superior Court judges may require cash bail as a condition of appearance and under what circumstances it may do so.
In considering the General Statutes and Practice Book sections regarding bonds and cash bail, the Court finds for the defendant in support of his motion for reduction of bond.
FACTS
The defendant, Anthony Proto, by motion dated November 22, 1999, moves that this court reconsider the issue of bail which was determined on February 24, 1999, at the defendant's arraignment hearing. An examination of the court file indicates that at the time of the defendant's arrest, on February 23, 1999, for possession of narcotics, in violation of General Statutes § 21 a-278(b), sale of illegal drugs, in violation of General Statutes § 21a-278(b), possession of a controlled substance within fifteen hundred feet of a school, in violation of General Statutes § 21a-278a(b), and interfering with an officer, in violation of General Statutes § 53a-167a, the defendant was found with nineteen packets of a white powder substance, a paper bag containing forty packets of a white rock CT Page 870 substance, a page master beeper, $195.00 in cash, and an airline ticket from Orlando, Florida to New York.[1] During the defendant's arraignment, on the aforementioned mentioned charges, he was represented by private counsel and a $45,000.00 cash bail was set by the court in G.A. 8 in New Haven. The defendant now seeks to have the court's $45,000.00 cash bail determination reinstituted.
 DISCUSSION
Issues concerning bond are governed by General Statutes §54-64a,[2] which permits Superior Court judges to set a bond, in no greater amount than necessary, during arraignment or subsequent thereto. Further, § 54-64a states that the court may consider a defendant's financial resources when determining what type of release will assure the defendant's appearance in court. General Statutes § 54-64a, however, contains no reference to cash bond or the setting of cash bond during an arraignment proceeding. Therefore, adopting the Supreme Court's rationale inState v. Clemente, 166 Conn. 501, 514, 353 A.2d 723 (1974), in the absence of a reference to cash bond in § 54-64a, Practice Book § 38-4 should govern over the non-existent statute. The issue of bail is a substantive matter and since the legislature has deigned not to act on the issue of cash bail, the Practice Book takes precedence.
Practice Book § 38-4 states that "when any defendant is presented before a judicial authority, such authority shall, in bailable offenses, promptly order the release of such person upon the first of the following conditions of release found sufficientreasonably to assure the person's appearance in court: (1) The defendant's execution of a written promise to appear without special conditions; (2) The defendant's execution of a written promise to appear with nonfinancial conditions; (3) The defendant's execution of a bond without surety in no greater amount than necessary; (4) The defendant's deposit with the clerk of the court of an amount of cash equal to 10 percent of the amount of the surety bond set, pursuant to Section 38-8; (5) The defendant's execution of a bond with surety in no greater amount than necessary[;] (6) The defendant's execution of a bond and his or her deposit with the clerk of the court of cash in the amount of the bond set by the judicial authority." (Emphasis added.) Therefore, from the language of Practice Book § 38-4, the judicial branch determined that cash bail may be set by the Superior Court judges only as the last possible alternative form CT Page 871 of release that will assure the defendant's appearance for court.
It should be noted that subsection (a)(6), of Practice Book § 38-4, the provision relating to cash bond, was added, in 1995, by the Rules Committee of the Superior Court, as a result of one of the recommendations of the Criminal Division Task Force.[3] The commentary to this subsection merely recites that this new language is "necessary in order to authorize the setting of a cash bond by the court in appropriate cases."[4]
Practice Book § 38-4, 1995 Rules Committee Commentary. There is no notation in the Practice Book to explain the term "appropriate, " as used by the Rules Committee, therefore it must be assumed that the Committee felt there was a need to require cash bond as a condition of appearance in exceptional cases only.
The state argues that the court should apply U.S. v. Salerno,481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), as a basis for upholding the state's use of cash bail, in furtherance of protecting the state's "interest in preventing crime and protecting its citizens against the defendant's pre-trial liberty interest." (State's Memorandum, p. 2.) The Court in U.S. v.Salerno, supra, 481 U.S. 755, held that "[t]he [Bail Reform] Act [also referred to as 18 U.S.C. § 3142 et seq.] authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel." The issue in U.S. v. Salerno, supra, 481 U.S. 742, concerned a preventive detention law enacted by the United States Congress, which is unlike the cash bail provisions included in the Connecticut Practice Book. There is nothing in Practice Book § 38-4(a)(6) that indicates that the cash bail subsection was for the purposes of preventive detention.
However, in considering Connecticut law surrounding preventive detention, General Statutes § 54-64f(b) does provide that bond may be revoked "[i]f the defendant is on release with respect to an offense for which a term of imprisonment of ten or more years may be imposed and the court, after an evidentiary hearing, finds by clear and convincing evidence that the defendant has violated reasonable conditions of his release and
that the safety of any other person is endangered, . . . [the court] may revoke his release." (Emphasis added.) Further, General Statutes § 54-64f(c) provides for revocation of bail if the defendant is on release with respect to an offense for CT Page 872 which a term of imprisonment often or more years may be imposed and the court, after an evidentiary hearing, finds by clear and convincing evidence that the safety of any other person is endangered while the defendant is on release and that there is probable cause to believe that the defendant has committed a federal, state or local crime while on release, there shall be a rebuttable presumption that his release should be revoked." Thus, the Connecticut legislature has made preventive detention applicable in certain situations which is very different from18 U.S.C.A. § 3142, adopted by Congress, which allows the United States district courts to liberally use preventive detention. Therefore, the state's reliance on U.S. v. Salerno, supra,481 U.S. 739 is misplaced because our Connecticut General Assembly has not allowed for preventive detention, except for the very narrow limitations herein set forth.
Additionally, the defendant alleges that the $45,000.00 cash bond was "inconsistent with constitutional protections afforded defendants." (Defendant's Memorandum, p. 4.) "Section 8 of article first provides that [i]n all criminal prosecutions, the accused shall have a right . . . to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great . . . this provision guarantees bail in a reasonable amount in all cases, even capital cases not falling within the exception. . . . The defendant has a fundamental constitutional right to bail pending trial in all but certain capital offense." (Citations omitted; internal quotation marks omitted.) State v. Ayala, 222 Conn. 331, 342-43,610 A.2d 1162 (1992). Further, our Supreme Court in State v. Menillo,159 Conn. 264, 269, 268 A.2d 667 (1970), interpreted our State Constitution, with respect to release on bail, to mean that "a reasonable amount [of bond] is not necessarily an amount within the power of an accused to raise. It is an amount which is reasonable under all the circumstances relevant to the likelihood that the accused will flee the jurisdiction or otherwise avoid being present for trial."
Although there is no Connecticut law concerning cash bail specifically, the Connecticut Supreme Court in State v. McDowell,241 Conn. 413, 420, 696 A.2d 977 (1997), held that "a defendant's indigency must be taken into account. As for the relevance of the defendant's indigency upon the Eighth Amendment bail question,Stack v. Boyle[, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951)] . . . is itself instructive, for it expressly [indicates] that the financial ability of the defendant to give bail is one of the CT Page 873 factors which must be taken into consideration. This is certainly sensible, for an impecunious person who pledges a small amount of collateral constituting all or almost all of his property is likely to have a stake at least as great as that of a wealthy person who pledges a large amount constituting a modest part of his property. . . . To impose a financial requirement which is beyond [a defendant's] means is unreasonable and, of course, makes the determination of eligibility [for bail] purposeless." (Internal quotation marks omitted.)
"Conditioning pretrial release on a defendant's ability to meet a financial bond set by the court emphasizes the appearance aspect of bond more so than do many nonfinancial conditions commonly imposed now pursuant to 54-64a(c)." State v. Ayala,222 Conn. 331, 351, 610 A.2d 1162 (1992). Further, in Browne v.Peters, 33 Conn. Sup. 531, 536, 360 A.2d 131, cert. denied,171 Conn. 730, 357 A.2d 510 (1976), the court held that "[i]ndigency alone has not been regarded as a "suspect' classification that would trigger application of the strict scrutiny test, which requires that a compelling state interest be demonstrated in order to justify the restitution on the particular group involved." (citing San Antonio Independent School District v.Rodriguez, 411 U.S. 1, 29, 93 S.Ct. 1278, 36 L.Ed. 16 (1976)).
The Fifth Circuit also makes interesting findings concerning the use of cash bail for indigent defendants. In Pugh v.Rainwater, 572 F.2d 1053, 1058 (5th Cir. 1978), the court declined to create a presumption against money bail for indigent defendants under the applicable Florida statute, due to the fact that the Supreme Court of Florida "twice declined to incorporate a presumption against money bail as a part of its rule." Despite the court's holding, the Fifth Circuit stated that "[s]ince the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant. . . . Such requirement is necessary to provide reasonable assurance of the accused's presence at trial is constitutionally permissible. Any requirement in excess of that amount would be inherently punitive and run afoul of due process requirements. . . . By definition an indigent is incapable of meeting any money bail requirement. Similarly disfavored is the non-indigent whose money bail is set in an amount higher than he can provide. Money bail, however, may not be the most burdensome requirement in all cases. . . . The incarceration of those who cannot, without meaningful consideration of other possible alternatives, infringes on both CT Page 874 due process and equal protection requirements. . . . We have no doubt that in the case of an indigent, whose appearance at trial could reasonably be assured by one of the alternate forms of release, pretrial confinement for inability to post money bail would constitute imposition of an excessive restrain." (Internal quotation marks omitted.) Pugh v. Rainwater, supra, 572 F.2d 1057-1058.
Therefore because there is clearly no constitutional infirmity with cash bail, the Practice Book, considered with its relative progression of having cash bail as a last resort, indicates that cash bail should be the exception rather than the rule. It should be used in cases where a serious crime is alleged and the defendant cannot be properly identified, illegal aliens are being held, and where the defendant has vast economic resources. SeeState v. Ayala, supra, 222 Conn. 342-43; Carlson v. Landon,342 U.S. 524, 537-42, 72 S.Ct. 525, 96 L.Ed. 547 (1952); State v.McDowell, supra, 241 Conn. 420. Cash bond is frequently used in family violence cases where a defendant consistently appears when called upon, but despite every conceivable condition of release being violated, repeats his or her assaultive behavior. If court appearance is the yardstick, expediency has prevailed out of necessity. This clearly presents a dilemma for any court in the absence of some legislative direction.
Therefore, Connecticut, albeit by rule of court, allows Superior Court judges to grant cash bail. See Practice Book §38-4. Further, the Connecticut case law makes clear that cash bail, in and of itself, does not violate either the federal or state constitutions. See State v. Ayala, supra, 222 Conn. 331. Further, however, the Connecticut courts emphasize the importance of considering a defendant's financial ability to pay bail and recognize that although indigency is not a suspect classification, it should be seriously considered during financial bail apportionment in order to create a reasonable result. See State v. McDowell, supra, 241 Conn. 420; Browne v.Peters, supra, 33 Conn. Sup. 536. Since Connecticut makes it apparent that unless there is a statutory exception, the purpose of bail is to require the defendant to appear when ordered to do so, the present case must be considered in that light.
On February 24, 1999, the defendant appeared before the court while being represented by private counsel. The court found probable cause on a charge of possession of narcotics with intent to sell. After a detailed summation of the defendant's criminal CT Page 875 history, the bail commissioner recommended a $65,000.00 surety bond instead of the $45,000.00 cash bond that was set overnight by the police. The state's attorney made a proffer that the defendant was bringing a major delivery of narcotics into New Haven. The state's attorney further stated that the defendant owes four years for four violations of probation, has a possession of narcotics with intent to sell charge pending in G.A. 22 in Milford, and has a history of narcotics trafficking. She then stated that $45,000.00 cash bond was appropriate. She made no claim of risk of flight and there have been no arrests or convictions for failure to appear. The defendant's attorney alluded to the defendant's drug treatment and stated that the defendant made $300.00 a week. He further stated that he thought the $45,000.00 cash bond was punitive. He failed, however, to set forth anything about the circumstance of the offense, the defendant's past record of appearing in court after being admitted to bail, family ties, employment record, financial resources, character and mental condition, and the defendant's community ties, all of which would have assisted the court in determining what conditions of release would secure the defendant's appearance in court. See General Statutes §54-64a; Practice Book § 38-10. The defendant's offenses are very serious and when considering his criminal record, he faces, if convicted, lengthy incarceration.[5]
Based on the lack of information provided by the defendant's attorney, the court could reasonably have heeded to the state's request for a $45,000.00 cash bail. The defendant clearly had a remedy under General Statutes § 54-63h, which provides for an expedited appeal to the appellate court. Through an oversight in the Clerk's office, the defendant was released on a $45,000.00 surety bond. When counsel for the defendant discovered the mistake, the defendant was returned to court on March 10, 1999 and bond was reset at $45,000.00 cash bond. The defendant interposed no objection and the bondsman was relieved of any obligation. The defendant has been in custody since that time.
The court is of the opinion that, because of the seriousness of the charges and the defendant's criminal history, a substantial bond is required. The court has fully considered all of the criteria enumerated in the General Statutes as well as the Practice Book. Based on the new proffers and representations, cash bond is no longer required and bail is set in the amount of $100,000.00 cash or professional surety.
CT Page 876 Howard T. Owens, Jr., Judge