THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALONZO FAGAN, Appellant.

Fourth Department, December 14, 1984

### APPEARANCES OF COUNSEL

*Edward J. Nowak* (*Brian Shiffrin* of counsel), for appellant.

*Howard R. Relin, District Attorney* (*Michael Nelson* of counsel), for respondent.

### OPINION OF THE COURT

CALLAHAN, J.

While a parolee on a 1977 robbery conviction, defendant was charged in an indictment with promoting prostitution in the second degree, assault in the third degree, and endangering the welfare of a child. These crimes allegedly occurred on or about October 18, 1980 and involved a 15-year-old female resident of the Rochester Children's Center, a youth detention facility where defendant was employed. A parole violation warrant was issued, charging defendant with five violations of his parole on the basis of the same facts underlying the criminal charges. At the conclusion of the final parole revocation proceedings, the hearing officer found that the teen-age victim, an admitted prostitute, was no more credible than defendant, dismissed the five charges and canceled the delinquency.

Defendant's attorney, as part of his pretrial omnibus motions on the criminal charges, moved to dismiss the indictment under principles of collateral estoppel in view of the determination made at the parole revocation hearing. The court denied the motion. Following a Bench trial, defendant was convicted of promoting prostitution and endangering the welfare of a child. On appeal, defendant contends that (1) the doctrine of collateral estoppel precluded the prosecutor from attempting to prove on a criminal trial the same charges which the State had failed, on the merits, to prove under a lesser burden of proof at the parole revocation hearing; (2) the trial court committed reversible error in allowing three witnesses improperly to testify as to the prior consistent statements of the complainant; and (3) the prosecutor impermissibly bolstered his case and became an unsworn witness by stating in his summation that there existed other evidence not presented at trial which linked the defendant to the crime.

The doctrine of collateral estoppel bars relitigation of an issue of ultimate fact which has previously been determined as between the same parties (*Ryan v New York Tel. Co.*, 62 NY2d 494, 500; *Matter of McGrath v Gold*, 36 NY2d 406, 411). It exists

in criminal as well as civil matters, independent of the prohibition against double jeopardy (*People v Berkowitz,* 50 NY2d 333, 344). It will apply in a criminal action if the parties are the same (*Matter of McGrath v Gold, supra,* p 411) or are so closely related that they may be deemed as one for these purposes. The District Attorney maintains that his office was not a party at the parole revocation hearing, and, therefore, the requisite identity of the parties is missing. This argument is without merit. The requisite of identity of parties is present. Prosecutors in a criminal action stand in sufficient relationship with the Division of Parole (see Executive Law, art 12-B) to satisfy the identity of the parties requirement (*People ex rel. Dowdy v Smith,* 48 NY2d 477, 482). As to the identity of issues, there is no dispute that all of the acts alleged in the indictment were the same as the charges alleged in the parole revocation.

In *Dowdy (supra),* the Court of Appeals determined that a defendant who had successfully presented an affirmative defense at the trial of a criminal action could "claim the benefit" of such when authorities subsequently sought to revoke his parole for the same underlying conduct. However, the court specifically avoided lending its imprimatur to the analysis that in general an acquittal in a criminal action does not bar related parole revocation proceedings due to the different standards of proof applicable to each (*People ex rel. Dowdy v Smith, supra,* pp 483-484). Subsequently, the court resolved this issue when it held that while the People may fail to establish a defendant's guilt beyond a reasonable doubt in a criminal action, they are not deprived of the opportunity to establish his guilt under the less stringent "preponderance of evidence" standard applicable to parole revocation proceedings (see *People ex rel. Matthews v New York State Div. of Parole,* 58 NY2d 196, 202; 9 NYCRR 8005.19 [e]). Thus, a parolee defendant might be acquitted in a criminal prosecution because the People are unable to meet the burden of proving the alleged crime "beyond a reasonable doubt"; however, the same proof could, under the lesser standard, support revocation of parole status.

Defendant contends that the converse of this principle would inure to his benefit and require dismissal of the indictment. The issue then for our resolution is: if the State has failed in its proof at a parole revocation proceeding requiring the less stringent "preponderance of evidence" standard, does this determination preclude a court (or jury) in a criminal prosecution from redetermining an issue previously resolved by an administrative agency?

This presents an issue of first impression in New York. The Court of Appeals has never stated whether collateral estoppel would be applicable in all cases (see *People ex rel. Matthews v New York State Div. of Parole, supra,* p 202). The Supreme Court of the State of Washington in addressing this identical issue held that public policy dictates rejection of the collateral estoppel doctrine in these circumstances. It concluded that the State is not collaterally estopped in a criminal case from relitigating an issue previously decided in the defendant's favor at a parole revocation hearing (*State v Dupard,* 93 Wn 2d 268). We agree.

At the outset, we question whether a determination made in a parole hearing could be equated to a "valid and final judgment" for collateral estoppel purposes in a criminal action. In any event, public policy considerations militate against application of the doctrine in these circumstances.

Parole revocation proceedings are not an integral part of a new criminal prosecution. In our view, the question of whether a new crime has been committed by a parolee should be properly addressed to the criminal justice system (e.g., formal prosecution in the context of the criminal action) and that matters within that system must be permitted to be there decided unhampered by parallel parole revocation proceedings. Parole revocation hearings and criminal actions are separate proceedings having different procedures and, most importantly, different objectives. The distinctions between the two proceedings should not be blurred and their objectives compromised by giving collateral estoppel effect to determinations at parole revocation proceedings. Care must be taken lest the rigid application of collateral estoppel principles to other areas of law runs afoul of countervailing policies which may at times outweigh the otherwise sound reason for the doctrine in preventing repetitive litigation to the greatest extent possible (*People v Berkowitz, supra,* p 344).

"For one thing, in the criminal law, in contrast to civil litigation, society has an overwhelming interest in ensuring not merely that the determination of guilt or innocence be made, but that it be made correctly. While the correct resolution of civil disputes is indeed an important goal of our legal system, it may fairly be said that society's primary interest in the resolution of civil disputes is that they be settled in a peaceful, orderly, and impartial manner. Since this is so, it is appropriate that litigation-limiting devices such as the doctrine of collateral estoppel be liberally applied in civil litigation. In contradistinction, it is the correctness of the result which is of pre-eminent concern in a

criminal prosecution, for the major function of a criminal proceeding is the conviction of the guilty and the acquittal of the innocent, not the swift resolution of some private dispute between the prosecutor and the accused. Hence, the civil doctrine of collateral estoppel, which accepts the occasional enthronement of erroneous findings of fact as a necessary cost of conserving the time and resources of the parties and the courts, is of less relevance in the criminal law." (*People v Berkowitz, supra,* p 345.)

Defendant next contends that the court erred in permitting employees of the center to testify as to their conversations with the complainant. It is claimed that this testimony impermissibly bolstered that of the alleged victim, in that "the introduction of the statements resulted in a totally unjustifiable four-fold increase in the number of witnesses testifying that the defendant had committed upon the complainant [*sic*]". It is true that a party may not ordinarily bolster the testimony of his witness by showing that the witness has previously made statements of the same tenor (*People v Wooden,* 66 AD2d 1004; *People v Peacock,* 70 AD2d 781). Where, however, the witness' testimony has been assailed as a recent fabrication, proof of prior consistent statements, made at a time when no motive to falsify existed, may be received to repel such an imputation (*People v Singer,* 300 NY 120; *People v Wooden, supra,* p 1005). It was the theory of the defense that the victim subsequently changed her story to implicate the defendant upon learning that she was going to be transferred from the center to another facility.

■ While the predicate groundwork for a recent fabrication exception to the "no bolstering" rule had been laid, it is readily apparent from the record that the exception would not have been applicable. Prior statements, in order to be admissible under the recent fabrication exception, must have been made before the motive to falsify existed (*People v Davis,* 44 NY2d 269, 277). Here, the victim's statements to the center employees were not made until after she learned of her planned placement. However, a review of the objected to testimony reveals that none of these witnesses related any details of the allegations as reported to them by the victim. The witnesses merely testified that they had discussed the allegations with her and in this regard their testimony was carefully circumscribed (cf. *People v Wooden, supra*). Here the witnesses did not describe any specific allegations made by the victim (any such details were elicited on cross-examination). Any actual statements attributed to the victim dealt with her own attitude towards her allegations or her state

of mind at the time and were properly admissible, especially given the defense's attack upon her motives for making the allegations (see *People v Ricco,* 56 NY2d 320, 328).

■ Defendant further claims that the prosecutor committed misconduct by stating in his summation that there existed other evidence not presented at trial, which linked defendant to the crime. No objection to this comment was taken, however, and the issue has therefore not been preserved for appellate review (CPL 470.05, subd 2; *People v Dawson,* 50 NY2d 311, 324; *People v Williams,* 46 NY2d 1070, 1071). While the egregiously improper nature of the prosecutor's remark cannot be overlooked and is not to be countenanced (see, e.g., *People v Wright,* 41 NY2d 172; *People v Ivey,* 83 AD2d 788), inasmuch as this was a Bench trial wherein both sides bent the evidentiary rules, there is no reason on this record for finding that defendant was deprived of a fair trial which would warrant an exercise of this court's discretionary review powers (see CPL 470.15, subd 6, par [a]).

Accordingly, the judgment of the Monroe County Court should be affirmed in all respects.

DILLON, P. J., DOERR, DENMAN and MOULE, JJ., concur.

Judgment unanimously affirmed.