629 A.2d 1007

COMMONWEALTH of Pennsylvania

v.

Jeremy COSGROVE, Appellant.

Superior Court of Pennsylvania.

Argued March 9, 1993.

Filed Aug. 11, 1993.

554

Theodore H. Swan, Jr., Abington, for appellant.

Patricia E. Coonahan, Asst. Dist. Atty., Cheltenham, Philadelphia, for Com., appellee.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

CAVANAUGH, Judge.

The issue presented in this appeal is whether the Commonwealth may continue to prosecute at trial offenses which have been already found by a court not to constitute a violation of the terms of the accused's probation. Appellant argues that principles of double jeopardy and collateral estoppel preclude his being tried on criminal charges where he had previously been found not to be in violation of probation based upon the charged offenses. The lower court held that the subsequent criminal prosecution was not barred and certified the issue for interlocutory review.[1]

Appellant Jeremy P. Cosgrove pled guilty to burglary in December, 1991. He was sentenced to a term of four years probation. On February 29, 1992 he was arrested and charged with attempted homicide, aggravated assault, weapons offenses, and related charges. The new arrest was based upon a confrontation between appellant and James Plenderleith in a parking lot after a concert. Appellant was accused with stabbing Mr. Plenderleith twice with a knife. On March 3, 1992 appellant was notified by the Adult Probation–Parole Department that he was charged with violating the conditions of his probation by being arrested on February 29th on the above-cited charges.

On March 10, 1992 a preliminary hearing was held on the new charges. Mr. Plenderleith was the sole witness. He stated that a violent confrontation between skinhead groups had broken out at the concert. He testified that while he was in the parking lot after leaving the concert appellant walked by him using profanity and shouting. Mr. Plenderleith told him to be quiet and when appellant did not, they exchanged words and ran at each other "with equal force." Mr. Plenderleith said he was expecting a fist fight and was not armed but that he was stabbed by appellant. On cross-examination,

1. The certification for immediate appeal was granted because the order denying the motion to dismiss involved a controlling question of law as to whether there is a substantial ground for difference of opinion and the immediate appeal may materially advance the ultimate determination of the matter. Order, October 6, 1992. *See* 42 Pa.C.S. § 702(b).

defense counsel sought to demonstrate that Mr. Plenderleith was the aggressor and that he was a skinhead and a person of violent propensities. Appellant was held over for trial on all charges except disorderly conduct.

On June 22, 1992 the probation revocation hearing (Gagnon II) was held before the Honorable Samuel W. Salus, II. The Commonwealth presented two witnesses: Mr. Plenderleith and Police Officer Karl Jones. Judge Salus denied appellant's request to continue the revocation hearing until after the trial.

Mr. Plenderleith again testified that the appellant was the aggressor in their confrontation with one another. He admitted to possibly using profane language himself during the confrontation. He also described the course of medical treatment that he underwent after appellant stabbed him. Mr. Plenderleith indicated that he had two permanent scars and had damage to the nerves on the bottom part of his forearm. Again on cross-examination, defense counsel questioned Mr. Plenderleith concerning his affiliation with rightist politics and neo-Nazi and skinhead groups. Mr. Plenderleith admitted that he was arrested on April 18, 1992 (after the confrontation with appellant) at Plenderleith's residence. At that time there were many people present at his home for a party. Defense counsel questioned Mr. Plenderleith about his arrest and sought to elicit an admission that it was in fact a party in honor of Adolf Hitler's birthday. This was denied by Mr. Plenderleith who maintained the party was for the birthday of a friend of his.

Officer Jones testified that he was present at the scene on February 29th at the concert and that many people had identified appellant as the person who had stabbed Mr. Plenderleith. Officer Jones approached appellant as he was sitting in his car and he asked appellant to produce the knife he had used to stab Mr. Plenderleith. Appellant told him it was under the seat and the knife was retrieved by Officer Jones. At the conclusion of the Gagnon II hearing on June 22, Judge Salus found that on the basis of the evidence produced he would not find appellant in violation of his probation. The

Judge concluded that he was unable to determine who was the aggressor in the confrontation.

In the instant case, appellant filed a Motions to Dismiss and for Habeas Corpus, a Motion for Bail and, a Motion to Disqualify the Commonwealth's attorney.[2] The lower court, the Honorable S. Gerald Corso, held a hearing on these motions on August 4, 1992. Defense presented two witnesses: Detective Scott Kelly and appellant. Detective Kelly's testimony consisted of identification of photographs taken by him at Mr. Plenderleith's residence at the time of his arrest on April 18, 1992. These photographs depicted Ku Klux Klan certificates, newspapers and other documents relating to neo-Nazi activities. One photograph showed a white robe with a Ku Klux Klan insignia. Detective Kelly also testified to conversations he had had with Mr. Plenderleith concerning his affiliation with skinhead organizations and the Ku Klux Klan. The purpose of this evidence was to demonstrate that Mr. Plenderleith, rather than the appellant, provoked the February 22d altercation. Appellant's testimony was directed to the issue of bail and did not directly relate to the incident on February 29th.

Judge Corso denied the Motion to Dismiss and for Habeas Corpus. Relying upon an opinion authored by President Judge William T. Nicholas, he found that the failure of the Commonwealth to carry its burden to prove a probation violation by a preponderance of the evidence did not collaterally estop the prosecution of the underlying charges. The memorandum opinion by President Judge Nicholas in *Commonwealth v. Davis*, (Montg.Cty.C.P.1992) analyzes the claim of double jeopardy/collateral estoppel. Judge Nicholas considered U.S. Supreme Court precedent and concluded that a probationer has not been placed in jeopardy for new criminal charges when a probation revocation hearing is held prior to trial on the new charges. The opinion then addresses the collateral estoppel argument in the context of prior Pennsylva-

**2.** The Motion to Disqualify was denied and that is not at issue in this appeal. Neither is the decision on the Motion for Bail at issue on appeal.

nia case law and public policy. It cites cases from other jurisdictions which have held that a prior revocation hearing does not bar a criminal trial for the same conduct. It concludes that the societal interest in prosecuting charges requires that the Commonwealth have a fair opportunity to prove the charges against a defendant beyond a reasonable doubt.

Our court recently addressed the concept of the doctrine of collateral estoppel:

"The doctrine of collateral estoppel prevents relitigation between parties of an issue where that issue has been previously decided by a competent legal forum. The doctrine is applicable to criminal prosecutions as well as to civil matters." *Commonwealth v. Wallace,* 411 Pa.Super. 576, 581, 602 A.2d 345, 348 (1992). The doctrine, "which is part of the concept of double jeopardy, requires that where an ultimate fact has been necessarily established *in favor of a defendant* in a former prosecution, the issue may not be relitigated in any subsequent proceeding against the defendant." *Commonwealth v. Wharton,* 406 Pa.Super. 430, 432, 594 A.2d 696, 697 (1991) (emphasis in original) (citations omitted).

*Commonwealth v. Smith,* 426 Pa.Super. 31, 626 A.2d 178, 181 (1993).

On appeal, appellant argues that because the Commonwealth failed to demonstrate a probation violation by a preponderance of the evidence, it should not be afforded the opportunity of trying him on the criminal charges where the burden of proof is greater, i.e., guilt beyond a reasonable doubt. Appellant cites authority from five states which, he argues, is supportive of the bar to prosecution. He also relies upon the case *Commonwealth v. Brown,* 503 Pa. 514, 469 A.2d 1371 (1983), *inter alia,* as a basis for precluding trial on the criminal charges.

In *Brown,* the Commonwealth requested to defer the conduct of the probation revocation hearing until after the criminal trial. At the trial, the defendant was acquitted of the

criminal charges. The Commonwealth then sought to hold the probation revocation hearing based upon the same activities which formed the criminal charges. The hearing was held and Brown's probation was revoked. The supreme court vacated the revocation of sentence because it found that the prior acquittal prevented the Commonwealth from relitigating the issue of defendant's participation in the criminal episode. Since the Commonwealth had elected to defer to the judgment of the jury, it was not entitled to an additional opportunity to relitigate the same issue applying a preponderance of the evidence test. *Id.* at 527, 469 A.2d at 1377. Since a defendant is bound in a subsequent revocation hearing by an earlier verdict of guilt, *Commonwealth v. Burrell,* 497 Pa. 367, 441 A.2d 744 (1982), the Commonwealth is also bound by the verdict of acquittal. *Id.* at 528, 469 A.2d at 1378.

The court in *Brown* reiterated the permissibility of a probation violation hearing being conducted prior to a trial for the criminal charges based on the same activities. *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973). The revocation hearing should be held "as speedily as possible." Pa.R.Crim.P. 1409, cited in *Brown, supra* at 524, 469 A.2d at 1376. Given the constitutionality of a pre-trial revocation hearing and given a defendant's right to a trial on the criminal charges, the position advocated by appellant is untenable. Clearly if probation is revoked in a pre-trial hearing, the ruling of the probation judge that the defendant committed the criminal act does not control the outcome of the guilt-determination process at trial. A defendant who has been found to be in violation of probation because of commission of a subsequent criminal act is nevertheless entitled to a trial in which he is presumed innocent of the charges. There is no application of the doctrine of collateral estoppel in such a situation because the defendant enjoys the presumption of innocence at trial. We conclude that collateral estoppel should also not apply when the outcome of a pre-trial revocation proceeding is adverse to the Commonwealth and favorable to the defendant. The right (or even duty) of the Commonwealth to conduct a pre-trial revocation hearing, as recognized in *Kates, Burrell,* and *Brown,* would be severely constrained if

the exercise of the right were subject to possible forfeiture of the ability to prosecute defendant at trial. The defendant may not avoid the guilt-determination process attendant to a trial through the expedient of a non-revocation of probation.

Violation of probation hearings are frequently held without the benefit of preparation that precedes a criminal trial. Rather, these hearings are properly conducted in a more informal manner than a trial, *see Kates,* in the interest of determining whether probation has proven an effective vehicle to accomplish rehabilitation. It is neither their purpose nor function to serve as a final arbiter of an individual's guilt or innocence of criminal charges. It is only through a criminal trial at which the defendant is presumed innocent and the Commonwealth bears the burden of proof of guilt beyond a reasonable doubt that contested issues of criminal culpability are determined with finality. To cede this responsibility to a setting that does not adhere to the procedural safeguards necessary for a fair adjudication of guilt, such as a probation revocation hearing, would result in a perversion of the criminal justice system.

As noted above, other state and federal courts that have addressed the issue have reached differing results.[3] We conclude that the reasoning employed in *People v. Fagan,* 104 A.D.2d 252, 483 N.Y.S.2d 489 (App.Div.4th Dept.1984), *aff'd.,* 66 N.Y.2d 481, 498 N.Y.S.2d 335, 489 N.E.2d 222 (1985), and *Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990) is the most persuasive and that permit-

---

**3.** Subsequent trial prohibited: *State v. Bradley,* 51 Or.App. 569, 626 P.2d 403 (1981); *People v. Kondo,* 51 Ill.App.3d 874, 9 Ill.Dec. 479, 366 N.E.2d 990 (5th Dist.1977); *State v. Chase,* 588 A.2d 120 (R.I.1991); *Ex Parte Tarver,* 725 S.W.2d 195 (Tex.Crim.App.1986). (Both Rhode Island and Texas law provide that a prior acquittal *does not* preclude a subsequent probation revocation hearing.)

Subsequent trial permitted: *United States v. Miller,* 797 F.2d 336 (6th Cir.1986); *Green v. State,* 463 So.2d 1139 (Fla.1985); *Teague v. State,* 169 Ga.App. 285, 312 S.E.2d 818 (1983); *People v. Fagan,* 104 A.D.2d 252, 483 N.Y.S.2d 489 (App.Div. 4th Dept. 1984) *aff'd.,* 66 N.Y.2d 481, 498 N.Y.S.2d 335, 489 N.E.2d 222 (1985); *State v. Williams,* 131 Ariz. 211, 639 P.2d 1036 (1982); *State v. Dupard,* 93 Wash.2d 268, 609 P.2d 961 (1980); *Lucido v. Superior Court,* 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990).

ting a criminal prosecution to follow a revocation proceeding that resulted in an outcome adverse to the Commonwealth is founded upon sound public policy. The California Supreme Court in *Lucido* stated that to apply collateral estoppel under the circumstances presented in this case would "undesirably alter the criminal trial process by permitting informal revocation determination to displace the intended factfinding function of the trial.... Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes." *Lucido,* 795 P.2d at 1229, 1230.

We hold that in order to ensure that the function of a criminal trial is not usurped by that of the probation revocation hearing, the Commonwealth may prosecute an individual on criminal charges even where a court has previously determined that it will not revoke the individual's probation based upon those charges. The decision rendered at a probation revocation hearing may not bind a subsequent factfinder at a criminal trial whose primary function is to determine the presence or absence of proof of guilt beyond a reasonable doubt.

Order affirmed.