OPINION OF THE COURT
Seymour Rotker, J.
Issue Presented
The case presents a question of apparent first impression in this State:[1] Does the doctrine of collateral estoppel prevent the People from continued criminal prosecution of a defendant who has been the subject of a full hearing regarding his violation of probation for the very same acts underlying one count of a new indictment against him and where the court presiding over such revocation hearing finds that the People have failed to prove those acts by a preponderance of the evidence?
For the reasons indicated below, the court finds that the doctrine of collateral estoppel precludes the prosecution from re-litigating the same charges at a criminal trial and grants the motion to dismiss that count of the indictment relating to those charges.[2]
Facts of the Case
Under the current indictment No. 1525/98,[3] the defendant, a probationer on a sexual abuse conviction, was charged with sexual abuse in the first degree and endangering the welfare of a child. The allegation is that on or about the date of September 1, 1997, the defendant touched the vagina of a six-year-old female. Specifically, the theory of the prosecutor’s case was that the defendant called the complainant over to where he was lying down and he touched her, over her clothing on her vagina, and the complainant reported this to her mother on the same day.
On May 8, 1998, the defendant was arraigned in Supreme Court on indictment No. 1525/98 and also on a violation of probation under indictment No. 1192/95. The defendant entered a plea of not guilty to both the indictment and the
*540 5 violation of probation. Under the violation of probation, he was charged with failing to report to his probation officer and with committing the very same acts alleged in count one of the indictment. Both matters appeared simultaneously on the court calendar in the Trial Assignment Part known as Part TAP2, Queens County Supreme Court.
On June 22, 1998, both cases again appeared on the court calendar in TAP2, at which time the People were ready for trial, but opted to first proceed on the violation of probation. The matter was thereafter referred for a hearing to Part KV.[4]
An extensive hearing, that continued over several dates, and included five[5] witnesses, was held. While one of the initial specifications was the defendant’s failure to report to his probation officer, that charge was withdrawn by the Department of Probation, when it became apparent, during the course of the hearing, that the defendant had been reporting to a probation officer other than the one who had lodged the specification. Attorneys for the Department of Probation had conducted that portion of the hearing, and once they withdrew that specification, they played no further role in the proceedings and the District Attorney became the sole prosecutor. The remaining specification consisted of the act of sexual abuse, the underlying conduct which was the subject of count one of the indictment. The Assistant District Attorney (ADA) assigned to the prosecution of the indictment conducted the violation hearing and was assisted by the same Assistant District Attorney who had presented the case to the Grand Jury.
Four witnesses were called to testify in support of the sexual abuse charge. The first witness to testify was the complainant’s mother. She testified as to the family’s relationship with the defendant, as to statements made to her by her daughter, and about her behavior when her daughter disclosed the incident to her. The second witness to testify was the female cousin of the complainant, a six-year-old child witness and eyewitness to the incident. Testifying also was the police officer who responded to the radio run of the incident. She testified as to conversations she had with the mother of the complainant and with the complainant, as well as her observations upon arriv *541 ing at the location. The final witness for the People was the complainant, a six-year-old female. She was “voir dired” and found qualified to testify as a sworn witness by the court (see, CPL 60.20), as well as her cousin, the other child witness. The girls testified that the incident occurred in a room at “Grandma Didi’s”[6] house where the defendant had been sleeping. The cousin testified that the girls had been jumping on the defendant while he was trying to sleep, that he asked them to stop, and that he pushed the complainant off his head by her rear end. The testimony of both girls revealed that the “touching” occurred in this manner and was over the clothing of the complainant, while she was being pushed away by the defendant.
During the People’s case,, the defendant objected to the admissibility of the witnesses’ testimony on hearsay grounds. Indeed, it is clear from reading the transcript of the violation of probation hearing that defense counsel protested the entire proceeding from its inception, alleging various violations of due process, fairness, and rules of evidence and procedure, including the hearsay violations. He vigorously cross-examined the witnesses, who were frequently questioned by the court as well. The defendant presented no evidence. At the conclusion of the hearing and formal argument by both sides, the hearing court found that the People had not sustained their burden of proof with respect to the violation of probation in that they failed to establish that the defendant had committed the acts alleged in the specification therein. The violation of probation was thereafter dismissed.
Motion to Dismiss
Upon the dismissal of the violation of probation, the defendant submitted the instant motion, asking this court to dismiss the pending indictment against him, on the theory that further prosecution would be barred by the principles of collateral estoppel. He claims that the violation of probation hearing constituted a previous prosecution for the same offense so that the People are therefore precluded from prosecuting the defendant for the same charges at a criminal trial which would require an even higher burden of proof, that of proof beyond a reasonable doubt, than was required at the hearing.
A brief of amicus curiae was submitted by the Legal Aid Society to the court to assist it in applying the law of collateral *542 estoppel to this case. The brief supports the position that the prosecution should be restrained from relitigating issues already decided against it under a lower standard of proof and that public policy does not bar its application under the facts of this case.
The People submitted a thorough brief in response to the motion and to the amicus brief, arguing against the application of the doctrine of collateral estoppel. They urge the court to deny the defendant’s motion on two grounds. First, they maintain that the strictures guiding the common-law principle of collateral estoppel have not been satisfied. Secondly, they argue that the Court of Appeals has established that based upon policy considerations, they should not be precluded from prosecuting a defendant, despite his success at a violation of probation hearing.
The Law of Collateral Estoppel
The doctrine of collateral estoppel “bars relitigation of an issue of ultimate fact which has previously been determined as between the same parties” (People v Fagan, 104 AD2d 252, 253, affd 66 NY2d 815 [1985]; Matter of McGrath v Gold, 36 NY2d 406, 411 [1975]). In order for the doctrine of collateral estoppel to apply in a particular case, certain threshold requirements must exist. There must be an identity of parties, an identity of issue, a final and valid prior judgment, and a full and fair opportunity to litigate the prior determination (People v Goodman, 69 NY2d 32 [1986]; Matter of McGrath v Gold, supra; People v Berkowitz, 50 NY2d 333, 345 [1980]). Furthermore, the issue sought to be precluded must have been decided against the party opposing the estoppel (People v Goodman, supra at 38; People v Acevedo, 69 NY2d 478, 484 [1987]). In determining whether to apply collateral estoppel, the inquiry of the court must include a determination of what the first proceeding decided and “how that determination bears on the later judgment” (People v Goodman, supra, at 40; see also, Ashe v Swenson, 397 US 436, 444; People v Trucchio, 159 Misc 2d 523, 527). This requires “consideration, not only of what facts the first judgment established, but also by what burden of proof’ (People v Trucchio, supra, at 527).
The doctrine of collateral estoppel, also known as “ ‘issue preclusion’” (People v Aguilera, 82 NY2d 23, 29 [1993]; People ex rel. Dowdy v Smith, 48 NY2d 477 [1979]), “operates in a criminal prosecution to bar relitigation of issues necessarily resolved in defendant’s favor” in a prior proceeding (People v *543 Acevedo, 69 NY2d 478, 484 [1987], supra). It arises “‘from a long-recognized equitable reaction against allowing a party to relitigate issues which have already been decided against him’ ” (People v Berkowitz, 50 NY2d 333, 344 [1980], supra). The defendant argues that the instant case presents precisely the scenario that issue preclusion is intended to prevent, claiming that all of the requirements of collateral estoppel have been met. The court has considered each of these prerequisites as they apply to the instant case, and agrees that they have been satisfied.
The first of these requirements is the need for there to be an identity of parties. To satisfy this requirement, the parties in both proceedings must be “so closely related that they may be deemed as one” (People v Berkowitz, supra, at 345; People ex rel. Dowdy v Smith, supra). It is clear that the District Attorney’s office prosecuted the violation of probation and that the attorneys for the Department of Probation played no further role in these proceedings once the specification alleging the defendant’s failure to report was dismissed. In any event, prosecutors in a criminal action stand in sufficient relationship with the Department of Probation to satisfy the identity of parties issue (see, People ex rel. Dowdy v Smith, supra; Matter of Darvin M. v Jacobs, 69 NY2d 957 [1987]).
The court finds the argument of the People that there was no identity of parties to be without merit. This court has reviewed the hearing minutes of the violation of probation, and the minutes reveal that the People clearly assumed the responsibility of proving the underlying acts alleged in the indictment.
“Defense counsel: At the outset, I might add that the People should be held to the allegations in the spec. Might I inquire respectfully as to whether or not probation is conducting this hearing?
“ADA: As to the first spec, the People are moving to and the People will be asking the questions of the witnesses as to the first spec which is the new arrest. The People are moving to amend the spec to the count that the defendant was indicted for which is sexual abuse in the first degree. The People are deleting — asking the Court to delete from the spec the aggravated sexual abuse charge * * * [t]he only spec that the People are prepared to go proceed on [sic] is the sexual abuse in the first degree charge.”[7]
The next requirement is the identity of issues. The court finds that the above exchange provides support for finding that *544 the identity of issues, as well as the identity of parties, has been satisfied. It is undisputed that the acts alleged in count one of the indictment were the same as those in the specifications of the violation of probation. While the court recognizes that a violation of probation hearing is intended to determine whether the defendant violated the terms of his probation, this determination cannot be made without first ascertaining whether the defendant committed the charges contained in the specifications of such violation of probation.
Turning then to the next issue, the court also finds that the People had a full and fair opportunity to litigate the allegations at the violation of probation hearing before a Justice of the Supreme Court. The hearing commenced on July 23, 1998, continued on the dates of August 5, 6 and 18, 1998, and a decision was issued on September 3, 1998. Both parties had a fair and full opportunity to present evidence and call witnesses. The People controlled the presentation of witnesses and evidence, called every conceivable witness to support the charges against the defendant, apparently prosecuting the violation as fully as they would have the indictment,[8] and even had the benefit of eliciting hearsay and bolstering testimony, allowed because of the relaxed rules of evidence at a revocation hearing (see, CPL 410.70), but which would not be admissible at trial.
The court finds that in view of the fact that the People opted to prosecute the violation of probation first, ostensibly fully aware of the ramifications of failing to successfully pursue it, it cannot now be argued that they had a lesser degree of motivation to succeed at the violation of probation hearing. The court notes that despite their earnest prosecution of the violation of probation and the evidentiary benefits of conducting a hearing as opposed to a trial, the People were nevertheless unable to sustain the lesser burden, one of a preponderance of the evidence, at the hearing.
The final requirement for collateral estoppel is that there be a final and valid judgment. The People contend that a probation hearing is not a final judgment because a defendant still remains on probation after a hearing and because new charges may be brought at any future time while the defendant remains on probation. The court is not persuaded by this argument. *545 While the court may make a finding of “non-violation” and restore the defendant to probation, any future violations lodged would result from new acts or omissions, and not those already resolved by the court. The People would not be permitted to try again to establish a probation violation based upon the same accusation of sexual abuse (see generally, CPL 410.70).
The court finds that the People’s reliance on Matter of McGrath v Gold (36 NY2d 406, supra), for the proposition that the determination is not final, to be misplaced. In McGrath, the dismissal of the indictment was held not to be final since it was “based on the suppression order which was interlocutory in nature” and would not prevent the People from trying the defendant on a “subsequent accusatory instrument charging the identical offenses” (Matter of McGrath v Gold, supra, at 412). This court finds that the sole issue before the hearing court, whether the defendant had violated his probation by committing the acts of sexual abuse, was necessarily decided by the court hearing the violation of probation and that this determination was final. By making a finding of nonviolation, the court found that the defendant had not committed the acts by even a preponderance of the evidence and had not violated his probation.
Having determined that the threshold requirements for the doctrine of collateral estoppel have been satisfied in this case, the issue before the court becomes whether public policy precludes its application.
In People v Fagan (66 NY2d 815 [1985], supra), the Court of Appeals held that the dismissal of charges at a parole revocation hearing “did not bar a later prosecution of criminal charges based on the same acts” (supra, at 816). In reaching this conclusion, the Court held that “[c]ollateral estoppel is a flexible doctrine, not to be applied automatically just because its formal prerequisites are met” (supra, at 816). It held that “[s]trong policy considerations militate against giving issues determined in prior litigation preclusive effect in a criminal case”, noting that it had “never done so” (supra, at 816). The Court further held that the “correct determination of guilt or innocence is paramount in criminal cases * * * and the People’s incentive to litigate in a felony prosecution would presumably be stronger than in a parole revocation proceeding” (supra, at 816).
The question before the court, then, is whether Fagan (supra) requires the denial of the defendant’s motion, notwithstanding the fact that all of its requirements have been met in this case.
In the opinion of the court, Fagan (supra) is not controlling with respect to the issue at bar. In Fagan, the Court dealt with *546 a parole revocation hearing conducted by “an administrative agency” (People v Fagan, 104 AD2d 252, 254, supra). However, in the instant case, the proceedings were held before a Justice of the Supreme Court. As such, the determination by the hearing court was from a court of concurrent jurisdiction after a full and fair hearing, and a judicial determination, as opposed to an administrative one, is ordinarily accorded collateral estoppel effect (People v Carroll, 200 AD2d 630 [2d Dept 1994]; People v Howard, 152 AD2d 325 [2d Dept 1989]; People v McGriff, 130 AD2d 141 [1st Dept 1987]).
Furthermore, as previously noted, the prosecution was aware of both matters which appeared simultaneously on the same Supreme Court calendar, and chose to proceed to a hearing on the violation of probation rather than to trial on the indictment.
The court finds that under the facts of this case, the People were on notice that their success or failure at the violation of probation hearing would impact upon the pending indictment and thus their incentive to litigate was as strong as it would have been at trial.[9] When the case was called in Part TAP2 on June 23, 1998, the court noted that “The issue of burden, of course, is substantially different, but at the same [time] if there was a finding on the case in chief that the prosecutor has not met his burden of proof, then he may be subjecting himself to collateral estoppel on the issue at trial.”[10] Prior to the commencement of the violation of probation hearing, defense counsel indicated that he wished to “memorialize for the record” his objection to “the procedure employed by the District Attorney’s office to secure this procedure of first going to the violation of probation hearing where in fact the gravamen of the violation is a criminal charge that is pending in TAP 2 which accompanied this case” (hearing minutes, at 4). He claimed that “due process mandates the trial of the case in chief first since that basically is the violation specified” (id., at 5). He also inquired whether the court would “impose sanctions if they do not meet their burden at the VOP hearing” (minutes of proceeding, June 23, 1998, at 6).
In the opinion of the court, the People were free to elect, in the judicial setting, to bring the defendant to trial first on a *547 pending indictment or to proceed on the violation of probation hearing for the same acts. The People were aware that by choosing to proceed on a violation of probation hearing rather than with the trial, they ran the risk of being collaterally estopped upon their failure to prevail at the revocation hearing. This is not to suggest that an acquittal after a trial on the indictment would preclude prosecution on the violation of probation. Since the burden at trial is a much more stringent standard of proof, that of proof beyond a reasonable doubt, the People could have chosen to try the indicted matter first and even if they lost, could nevertheless succeed at a probation hearing (see, People v Trucchio, 159 Misc 2d 523, supra). Indeed, where the People succeed at a probation revocation hearing, they could still prosecute the defendant at trial for the same acts. Proof at a probation revocation hearing need only establish the allegations by the slight burden of a preponderance of the evidence (CPL 410.70 [3]), while proof at a criminal trial requires the higher standard of beyond a reasonable doubt (CPL 300.10).
The court notes that other jurisdictions have grappled with this issue and with Fagan’s applicability to probation hearings. Pennsylvania,[11] California,[12] Connecticut,[13] Washington[14] and the Sixth Circuit[15] are among some of the courts that have applied Fagan (supra) to probation hearings, finding that public policy dictates that collateral estoppel not be utilized to bar prosecution at trial when the People fail to sustain a violation of probation upon the same acts underlying the new charge. However, in Rhode Island,[16] Illinois,[17] Oregon,[18] and Texas,[19] the courts have not applied Fagan’s public policy consideration against violations of probation.
The court agrees with the reasoning of those jurisdictions applying the doctrine of collateral estoppel and finds that Fagan’s public policy argument is not controlling under the specific facts of the case herein. Furthermore, considering the extensiveness of the hearing, the full and fair opportunity the *548 People had to present their case, and the probable lack of any additional inculpatory evidence, the court finds that public policy would favor the application of the doctrine of collateral estoppel. Logic would dictate that if the People are unable to persuade a Supreme Court Justice, where they had notice that the issue was to be litigated and were afforded a complete opportunity to do so, that the defendant committed the acts that he is accused of by even a preponderance of the evidence, then they would be hard pressed to succeed at trial where the burden of proof is beyond a reasonable doubt and the rules of evidence are not as relaxed. It would follow then that judicial economy and public policy would not encourage relitigation in a situation such as this one. Finally, unlike in Fagan (supra), the People in the instant case are not being held to a decision made by a Hearing Officer at an administrative proceeding in which they had no notice nor played a role.
Accordingly, the People are collaterally estopped from proceeding to trial on the sexual abuse charged.[20]

. Although the same issue was raised in a CPLR article 78 proceeding in Matter of Maisonet v Merola (69 NY2d 965 [1987]), the Court of Appeals declined to address the issue noting that “collateral estoppel does not implicate the legality of the entire proceeding * * * and it is the type of claimed error which may be properly reviewed during the regular appellate process” (supra, at 966).

. Count one charges sexual abuse in the first degree.

. Indictment No. 1525/98 superseded indictment No. 3574/97.

. Part KV is a specialized Supreme Court Part designated by the Administrative Judge of the county to handle violation of probation hearings, and is presided over by a Supreme Court Justice.

. Four witnesses testified regarding the allegation of sexual abuse. A fifth witness, a probation officer, also testified regarding the specification relating to the defendant’s failure to report.

. July hearing minutes, at 116; Aug. hearing minutes, at 114.

. Hearing minutes, at 9.

. At the proceedings before this court on June 23, 1998, when the People answered ready for trial, the court inquired of the Assistant District Attorney, “How many witnesses do you have in this case?” and he replied “Four”. (See, hearing minutes, at 4.) These were the same four witnesses that testified at the hearing.

. Cf., People v Roselle, 193 AD2d 56, affd 84 NY2d 350 (1994) (where the Court noted that parties did not contemplate the possibility that a determination made by the Family Court would act as bar to later prosecution for the same act and declined to apply collateral estoppel).

. Minutes of proceeding, June 23, 1998, at 5.

. Commonwealth v Cosgrove, 427 Pa Super 553, 629 A2d 1007 (1993).

. Lucido v Superior Ct., 51 Cal 3d 335, 795 P2d 1223 (1990).

. State v McDowell, 242 Conn 648, 699 A2d 987 (1997).

. State v Dupard, 93 Wash 2d 268, 609 P2d 961 (1980).

. United States v Miller, 797 F2d 336 (6th Cir 1986).

. State v Chase, 588 A2d 120 (RI 1991).

. People v Bone, 82 111 2d 282, 412 NE2d 444 (1980).

. State v Donovan, 305 Ore 332, 751 P2d 1109 (1988).

. Ex Parte Tarver, 725 SW2d 195 (Tex 1986).

. No identity of issue exists for the charge of endangering the welfare of a minor. It was not a specification in the violation of probation, was not prosecuted by the People at the violation of probation hearing and is not a lesser included offense of sexual abuse in the first degree. It cannot therefore be collaterally estopped.