J-A09001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEFFERY MASSI, | |
| Appellant | No. 98 EDA 2014 |

Appeal from the Order December 9, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001179-2012

BEFORE:  BOWES, DONOHUE, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 19, 2016**

**Have to put that judge Donohue did not participate in this appeal**

Jeffery Massi appeals from the order entered December 9, 2013, denying his motion to dismiss based on double jeopardy grounds.[1]  We affirm.

---

[1] This panel initially remanded this matter for compliance with Pa.R.Crim.P. 587(B)(4-6) (requiring judge to make finding as to whether double jeopardy motion is frivolous and to advise defendant of appellate procedure that must be followed after frivolity determination).  We retained jurisdiction.  In a March 4, 2016 order, the trial court determined that the motion was not frivolous and thus immediately appealable as a collateral order and so advised Appellant.  Pa.R.Crim.P. 587(B)(6); ***see also Commonwealth v. Orie***, 22 A.3d 1021, 1024 (Pa. 2011) (orders denying double jeopardy claims are final orders for purposes of appeal absent a finding by the trial

*(Footnote Continued Next Page)*

The pertinent facts of this matter are as follows. Appellant was on probation for an unrelated crime. Agent Shawn Patrick Butler, who was employed by the West Philadelphia Division of Probation and Probation, was Appellant's probation officer. On December 28, 2011, Agent Butler went to 7434 Merdick Place, Philadelphia, Appellant's designated residence, to conduct a home visit. Appellant admitted that he had recently consumed Percocet and was therefore handcuffed and placed under arrest. Agent Butler and his partner started to search the area. In so doing, Agent Butler made a sweep of the utility room, which was accessible only through Appellant's bedroom.

On a shelf in that room, Agent Butler discovered a loaded gun that was wrapped in material and plastic. When asked, Appellant admitted that he was aware of the weapon's existence, said that it belonged to his father, and reported that he had not placed it in the utility closet. A glass pipe used to consume drugs was found in a dresser in the bedroom. Accordingly, on

*(Footnote Continued)* _____

court that the double jeopardy motion was frivolous): **Commonwealth v. Barber**, 940 A.2d 369, 376 (Pa.Super. 2007) ("a defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on state or federal double jeopardy grounds."). Accordingly, the present appeal is considered timely as of the date of entry of the March 4, 2016 order. Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

December 29, 2011, Appellant was charged in this action with possession of a firearm by a prohibited person and possession of drug paraphernalia. On January 27, 2012, after a preliminary hearing, the charges were bound over for trial. Appellant then filed an omnibus pretrial motion to suppress evidence and for *habeas corpus* relief, seeking dismissal of the charges due to the lack of a *prima facie* case that he possessed a firearm.

On July 20, 2012, the Commonwealth conducted a violation of probation ("VOP") hearing in the other case based on Agent Butler's discovery of the drug paraphernalia and weapon. At that hearing, Agent Butler testified to the above-cited facts. Specifically, he recounted that, during the home visit on December 28, 2011, Appellant admitted that he had recently consumed drugs and was arrested. Agent Butler searched the vicinity and found the loaded gun on a shelf in the utility room next to Appellant's bedroom. Appellant admitted that he knew of the weapon. Agent Butler also testified that Appellant told him that the gun in question had "been in our family for a long time. My fingerprints will probably be on it because my father always lets me hold it. I didn't know it was there." Motion to Dismiss, 12/5/13, at Exhibit C (N.T., 7/20/12, at 14).

At the VOP hearing, Appellant's father confirmed that he had purchased the gun and was licensed to own it. Additionally, Appellant's mother testified that she wrapped the gun and placed it on the shelf in the utility room. She explained that she wanted to hide the weapon from their

grandchildren who visited the home. At the conclusion of the VOP hearing, the court determined that the Commonwealth failed to establish by a preponderance of the evidence that Appellant violated his probation by illegally possessing a firearm or the drug paraphernalia and declined to find Appellant in violation of the terms of his probation.

As a result of the VOP court's ruling, on December 5, 2013, Appellant filed a motion to dismiss this action based on "collateral estoppel principles that are embodied in the [double jeopardy clause of the] Fifth Amendment as well as the same principles that are embodied in Article 1, § 10 of the Pennsylvania Constitution." N.T., 12/9/13, at 7. According to Appellant, since the Commonwealth failed to establish by a preponderance of the evidence that he illegally possessed the firearm and pipe in question at his VOP hearing, it was precluded from trying him for the same criminal conduct. The Commonwealth countered that jeopardy had not yet attached in either action and therefore no double jeopardy violation could occur by trying Appellant.

The trial court held a hearing on the double jeopardy motion on December 9, 2013, and denied it on the record. Appellant timely appealed. The sole issue Appellant levels on appeal is:

> Did the trial court err in denying Appellant's motion to dismiss this prosecution on double jeopardy grounds where the Commonwealth first elected to proceed with a violation of probation hearing in the court of common pleas and attempted to punish the defendant and take away his liberty for the same

alleged criminal conduct that now forms the basis for the instant prosecution, but received an adverse ruling in the earlier proceeding when the Commonwealth failed to sustain its burden of proving a violation by a preponderance of the evidence.

Appellant's brief at 4.

Our standard of review is as follows. "[A]n appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*." ***Commonwealth v. Martin***, 97 A.3d 363, 364 (Pa.Super. 2014) (citation omitted).

The Fifth Amendment to the United States Constitution provides, in pertinent part, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . . ." U.S.C.A. Const. Amend. V. "The double jeopardy protections afforded by our state constitution are coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense." ***Commonweatlh v. States***, 938 A.2d 1016, 1017-19 (Pa. 2007) (emphasis added). "In a jury trial, jeopardy attaches when the jury is empaneled and sworn; in a non-jury trial jeopardy attaches when the court begins to hear evidence." ***Commonwealth v. Rosario***, 613 A.2d 1244, 1247 (Pa.Super. 1992), *aff'd*, 679 A.2d 756 (Pa. 1996) (***Serfass v. United States****,* 420 U.S. 377 (1975)). Additionally, our Supreme Court has recognized that "[a] VOP

hearing differs from a trial, as probation and parole are not part of the criminal prosecution[.]" ***Commonwealth v. Mullins***, 918 A.2d 82, 85 (Pa. 2007).

While collateral estoppel is most commonly used in the civil context, criminal double jeopardy protections incorporate the doctrine of collateral estoppel or issue preclusion. ***Ashe v. Swenson***, 397 U.S. 436 (1970). In ***Ashe***, six men were playing poker in the basement of a home. Three or four masked individuals entered the home armed with shotguns and pistols. The assailants robbed the poker players and then escaped in one of the victim's cars. Police arrested three men within a close distance of that car, after it had been abandoned. Ashe was arrested by another officer "some distance away." ***Ashe***, ***supra*** at 437.

The state charged Ashe with six robberies and theft of the vehicle. Ashe proceeded to trial on one count of robbery against a single poker player. "The trial judge instructed the jury that if it found that the petitioner was one of the participants in the armed robbery, the theft of 'any money' from [the one victim] would sustain a conviction." ***Ashe***, ***supra*** at 439. The court added, "if the petitioner was one of the robbers, he was guilty under the law even if he had not personally robbed [the individual]." ***Id***. The jury acquitted Ashe.

Subsequently, the state sought to prosecute Ashe for the robbery of another poker player. The trial court denied Ashe's double jeopardy motion,

and the jury found him guilty. After the Missouri State Supreme Court affirmed, Ashe sought federal relief. Ultimately, the United States Supreme Court reversed, concluding that double jeopardy included the federal collateral estoppel doctrine. It held that, based on the facts presented in the first trial, the issue of whether Ashe had been one of the individuals to take part in the robbery and theft had been decided.

The civil concept of collateral estoppel and that utilized in the criminal context are distinct. **States**, **supra** at 1020. "With respect to the criminal law defendant, collateral estoppel is treated as a subpart of double jeopardy protection and is defined as follows: 'Collateral estoppel does not automatically bar subsequent prosecutions, but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment.'" **Id**. (partially quoting **Commonwealth v. Smith**, 540 A.2d 246, 251 (Pa. 1988)). Thus, collateral estoppel's application in criminal matters is "not as straightforward as it is in the civil context because it must be viewed through the lens of double jeopardy." **States, supra** at 1020.

In the civil context, the doctrine of collateral estoppel promotes efficiency by having an issue, once decided, given final effect in another matter. However, "[t]he efficiency concerns that drive the collateral estoppel policy on the civil side are not nearly as important in criminal cases because criminal cases involve a public interest in the accuracy and justice

of criminal results that outweighs the economy concerns that undergird the estoppel doctrine." *Id*. Thus, "[a]pplication of collateral estoppel principles to the criminal law was intended to enhance the traditional double jeopardy protection and to provide relief from the growing threat of multiple prosecutions[, and] it is to be applied with realism and rationality and not applied with the hypertechnical and archaic approach of a 19th century pleading book." *Id*. (citation omitted).

In Pennsylvania, the criminal iteration of the concept of collateral estoppel is derived from *Ashe* and employs "the federal three-part test to determine if collateral estoppel applies to limit further litigation on a particular issue." *Id*. at 1021. We apply collateral estoppel criminally where there is:

> 1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;
>
> 2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and
>
> 3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Id*.; *Commonwealth v. Smith*, 540 A.2d 246, 251 (Pa. 1988); *Commonwealth v. Hude*, 425 A.2d 313, 320 (Pa. 1980).

In the present case, Appellant seeks to apply collateral estoppel since the issue herein, whether he possessed the gun, was identical to that

involved in the VOP proceeding, wherein the Commonwealth sought to revoke his probation based upon his possession of the weapon. That issue was litigated at the VOP proceeding and the VOP court determined that a violation did not occur. Appellant also notes that the Commonwealth in the VOP proceeding had a lesser standard of proof, a preponderance of the evidence.

We conclude that our decision in **Commonwealth v. Cosgrove**, 629 A.2d 1007 (Pa.Super. 1993), is controlling herein. The precise issue decided in that case is the same one in the instant appeal: "The issue presented in this appeal is whether the Commonwealth may continue to prosecute at trial offenses which have been already found by a court not to constitute a violation of the terms of the accused's probation." **Id**. at 1008. As in this case, the defendant therein maintained that the collateral estoppel aspect of double jeopardy prevented the Commonwealth from proceeding to trial in that matter since he was previously found not to be in violation of the terms of probation.

The facts were as follows. Cosgrove pled guilty to burglary in a different case and was sentenced to a probationary term. While on probation, he was arrested and charged at the criminal action in question in **Cosgrove**. The charges included attempted murder, aggravated assault, a weapons offense, and related crimes. Those charges were based upon an

altercation between Cosgrove and James Plenderleith in a parking lot after a concert when Cosgrove stabbed Plenderleith.

Cosgrove was charged with VOP in the other criminal case. The Commonwealth first proceeded to the VOP hearing. At the VOP hearing, Plenderleith claimed that Cosgrove was the aggressor in their confrontation. However, the evidence established that Plenderleith was a member of a neo-Nazi skinhead group and the Ku Klux Klan, and the melee in the parking lot was started by one of those organizations. After the conclusion of the VOP hearing, the VOP court found that it could not determine if Cosgrove or Plenderleith was the aggressor in the fight, and declined to find Cosgrove in violation of the terms of his probation.

Cosgrove then moved for dismissal of the pending criminal charges arising from the stabbing. The trial court in **Cosgrove** found that the Commonwealth's failure to carry its burden of proving a probation violation "by a preponderance of the evidence did not collaterally estop the prosecution of the underlying charges." **Id**. at 1009. It "concluded that a probationer has not been placed in jeopardy for new criminal charges when a probation revocation hearing is held prior to trial on the new charges." **Id**. at 1010. The trial court also relied upon cases from other jurisdictions wherein the courts ruled that a prior revocation hearing does not bar a criminal trial for the conduct upon which the VOP proceeding was premised. The trial court found that "the societal interest in prosecuting charges

- 10 -

requires that the Commonwealth have a fair opportunity to prove the charges against a defendant beyond a reasonable doubt." *Id*.

We adopted the reasoning of the trial court. In so doing, we rejected Cosgrove's invocation of the decision in *Commonwealth v. Brown*, 469 A.2d 1371 (Pa. 1983). *Brown* involved the reverse of the scenario at issue in *Cosgrove*. Specifically, Brown was on probation when he committed new offenses. The Commonwealth decided to go to trial on the new offenses before it proceeded with the VOP proceeding. The defendant was acquitted of the charges at the criminal trial. The Commonwealth then proceeded successfully with a probation revocation hearing based upon the same conduct for which the defendant had been acquitted. Our Supreme Court reversed. It found that the prior acquittal prevented the Commonwealth from re-litigating the issue of the defendant's commission of the crimes. The Supreme Court reasoned that, since the Commonwealth decided to proceed to trial before a jury, it was not entitled to a second bite of the apple by relitigating the same issue at the VOP hearing. It noted that a defendant is bound in a subsequent revocation hearing by an earlier determination that he is guilty of the charges, and concluded that the Commonwealth is likewise bound by an acquittal.

In distinguishing *Brown*, the *Cosgrove* Court noted that it is permissible for the Commonwealth to proceed to a probation violation proceeding before it elects to try the defendant for the same conduct. If

- 11 -

probation is revoked before the defendant is tried on the charges, "the ruling of the probation judge that the defendant committed the criminal act does not control the outcome of the guilt-determination process at trial" since the defendant is presumed innocent before a trial. *Id*. at 1010. "A defendant who has been found to be in violation of probation because of commission of a subsequent criminal act is nevertheless entitled to a trial . . . There is no application of the doctrine of collateral estoppel in such a situation because the defendant enjoys the presumption of innocence at trial." *Id*. at 1010-1011.

The ***Cosgrove*** panel reasoned that "collateral estoppel should also not apply when the outcome of a pre-trial revocation proceeding is adverse to the Commonwealth and favorable to the defendant." *Id*. at 1011. We observed that the Commonwealth's right to conduct a pre-trial revocation hearing, as provided in the case law, "would be severely constrained if the exercise of the right were subject to possible forfeiture of the ability to prosecute defendant at trial." *Id.*

This Court further observed that VOP hearings are "frequently held without the benefit of preparation that precedes a criminal trial" and are more informal than a trial so as to advance the interest of the purpose of a VOP hearing, which is to determine whether probation has been effective in rehabilitating the defendant. *Id*. Additionally, the function of a VOP hearing is not "to serve as a final arbiter of an individual's guilt or innocence of

criminal charges. It is only through a criminal trial at which the defendant is presumed innocent and the Commonwealth bears the burden of proof of guilt beyond a reasonable doubt that contested issues of criminal culpability are determined with finality." *Id*. In *Cosgrove*, we refused to transfer the responsibility of determining guilt or innocence to a probation revocation "setting that does not adhere to the procedural safeguards necessary for a fair adjudication of guilt" since shifting that responsibility from a jury "would result in a perversion of the criminal justice system." *Id*.

In that decision, this Court articulated our cognizance that other state and federal courts addressing the same issue had reached different conclusions in connection with the identical issue. We specifically adopted the reasoning employed by those decisions that permit "a criminal prosecution to follow a revocation proceeding that resulted in an outcome adverse to the Commonwealth [as] founded upon sound public policy." *Id*. This Court held "that in order to ensure that the function of a criminal trial is not usurped by that of the probation revocation hearing, the Commonwealth may prosecute an individual on criminal charges even where a court has previously determined that it will not revoke the individual's probation based upon those charges." *Id*.

Since our decision in *Cosgrove*, additional jurisdictions have adopted the same precept that adjudications in the probation violation setting are not given collateral estoppel effect for purposes of a criminal prosecution for the

- 13 -

same conduct. In **State v. Brunet**, 806 A.2d 1007 (Vt. 2002), the defendant was on probation for a domestic assault and was not permitted to be in contact with the victim. He thereafter was charged with a new domestic assault on the same victim in a criminal action as well as violating his probation for committing that assault. The VOP hearing was held first, and the VOP court concluded that the defendant had not assaulted the victim a second time and had acted defensively when she happened to come into the same bar where the defendant was located. It declined to revoke the defendant's probation.

The defendant thereafter was tried and convicted of assault. On appeal, he claimed that collateral estoppel prevented his criminal trial in that, at the VOP hearing, the Commonwealth had had a full and fair opportunity to litigate the question of whether he had assaulted the victim at the bar. The **Brunet** Court turned to "evaluation by other courts that have considered the identical issue." **Id**. at 1010. It observed, "Most have concluded that probation revocation hearings are so fundamentally different from criminal trials in their purpose and procedures that it would be unfair to apply collateral estoppel in these circumstances." **Id**.

The Vermont Supreme Court observed, that, in its state, the rules of evidence and procedure vary between the VOP and criminal settings. It noted that this variation is a result of the recognition that the purpose of the VOP hearing is not to determine a defendant's guilt or innocence of the

underlying crime but, rather, to determine if probation has been an effective alternative to incarceration. The Court opined, "Thus, it is universally acknowledged that a revocation proceeding is not essentially 'criminal' in nature, and that double jeopardy does not attach at a revocation hearing to bar a trial of the new criminal charges." *Id*. at 1011. Simply put, in a VOP setting, the defendant has not been tried for the offense in question. Instead, the defendant's amenability to treatment was examined.

The *Brunet* Court also observed that the prosecution, in the VOP setting, will ordinarily not prepare as fully as it does for a criminal trial, given the lower standard of proof (preponderance of the evidence) and less stringent rules of evidence and procedure. The prosecution, after the VOP hearing, may have garnered additional evidence. Therefore, the Court concluded, it would not be fair or sound public policy to apply collateral estoppel after a VOP hearing. The *Brunet* Court additionally observed, "Most courts have also concluded that applying collateral estoppel to bar a criminal prosecution based upon an earlier probation-revocation decision would undermine the interests of justice, and erode public confidence in the criminal justice system." *Id*.

The Supreme Court of Rhode Island, applying previous precedent, likewise concluded that double jeopardy does not attach at a VOP hearing. *State v. Gautier*, 871 A.2d 347 (R.I. 2005). The defendant therein contended that he could not be prosecuted for a murder after a VOP court

refused to revoke the defendant's probation due to its specific finding that the state had failed to establish that the defendant murdered the victim in question. The defendant contended that the state could not prosecute him on the murder charge since "relitigation of his criminal liability on that charge would violate the prohibitions against double jeopardy as guaranteed by the Fifth Amendment to the United States Constitution, and its state counterpart[.]" ***Id***. at 361. The Rhode Island Supreme Court rejected that position, articulating that it was

> settled law that double jeopardy does not operate to bar prosecution of a defendant for criminal misconduct after the state alleges that very same misconduct as a basis for a finding of a violation of the defendant's preexisting probation. As this Court previously established, a probation-revocation hearing is considered a continuation of the original prosecution for which probation was imposed—in which the sole purpose is to determine whether a criminal defendant has breached a condition of his existing probation, not to convict that individual of a new criminal offense. Consequently, it is black letter law that jeopardy does not attach to probation-revocation proceedings, because these proceedings are not designed to punish criminal defendants for violation of a criminal law.

***Id***. (citations and quotation marks omitted); ***See also***, ***e.g.***, ***Jonas v. Wainwright***, 779 F.2d 1576, 1577 (11th Cir. 1986) ("double jeopardy clause does not apply to parole revocation proceedings"); ***United States v. Whitney***, 649 F.2d 296, 298 (5th Cir. 1981) ("Double jeopardy of the Fifth Amendment does not apply to parole and probation proceedings since they are not designed to punish a criminal defendant for violation of a criminal law. The purpose of parole and probation revocation proceedings is to

determine whether a parolee or probationer has violated the conditions of his parole or probation."); ***In re Interest of Rebecca B.***, 783 N.W.2d 783, 789 (Neb. 2010) ("it is black letter law that double jeopardy is not implicated by probation revocation proceedings"); ***People v. Hilton***, 745 N.E.2d 381 (N.Y. 2000) (the finding at a probation revocation hearing that the prosecution had failed to establish by a preponderance of the evidence that defendant had violated his probation by sexually abusing a child did not operate as collateral estoppel so as to bar prosecution of defendant for sexual abuse based on charge arising from same incident); ***Duke v. State***, 2 S.W.3d 512, 515-16 (Tex. Crim. App. 1999) (holding that double jeopardy does not apply in a probation revocation hearing, which results in "neither a conviction nor an acquittal," but in "a finding on which the trial court can then exercise its discretion by revoking or continuing probation"); ***State v. Terry***, 620 N.W.2d 217 (Wis.App. 2000) (rejecting defendant's request to overturn his conviction for possession of narcotics based upon the fact that, during antecedent VOP proceedings, it was determined that the state did not prove that he was in possession of the drugs).

***Cosgrove*** is determinative of the issue presented herein. It is grounded in strong public policy considerations. Moreover, a VOP adjudication is not a determination of whether a defendant is guilty of the crime in question; it is a decision as to whether the defendant's conduct is such that he should remain on probation. A defendant is not tried for the

offense at issue in the criminal action for purposes of the VOP adjudication. As noted, double jeopardy attaches when a jury is empaneled or a trial court proceeds to here evidence at a nonjury trial. Neither event occurred at Appellant's VOP hearing. Hence, he will not be placed in jeopardy for that offense twice when the prosecution proceeds to trial on the crime after a VOP hearing.

Appellant maintains that the **Brown** decision and **Commonwealth v. Holder**, 805 A.2d 499 (Pa. 2002) (OAJC), "compel the dismissal of the instant prosecution." Appellant's brief at 13. We disagree. In **Cosgrove**, we expressly distinguished **Brown** since the procedural posture of the case was the converse of that involved therein. The **Holder** decision was a plurality and involved an evidentiary matter. In **Holder**, the defendant was on probation for an earlier crime. He was then accused of committing a rape and other charges arising out of that incident. The Commonwealth conducted his revocation hearing before trial. Holder attempted to introduce into evidence facts that allegedly would have shown that the victim had previously made a false rape allegation. The VOP court precluded admission of that evidence based upon the Rape Shield Law. At trial, a different judge ruled that the defendant was collaterally estopped from presenting the same evidence based on the prior ruling. Writing for only two Justices, Justice

Nigro agreed with the application of collateral estoppel as to the VOP evidentiary ruling.[2] That case is not precedential. Moreover, it does not involve the issue presented herein, which is whether the Commonwealth can proceed to trial on crimes when a VOP court has refused to revoke probation based upon the defendant's commission of the acts supporting the crimes. *Cosgrove* directly addresses that contention.

Order affirmed. Jurisdiction relinquished. Case remanded.

Judge Donohue did not participate in the consideration of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2016

---

[2] Justice Zappala concurred in the result. Justice, now Chief Justice Saylor, joined by Justices Castille and Newman, authored a concurring and dissenting opinion. Justice Saylor concluded that the Commonwealth should not be able to use collateral estoppel offensively, which is not the situation herein.